374 So.2d 1186 (1979)
STATE of Louisiana
v.
Neil H. SANDERS.
No. 63864.
Supreme Court of Louisiana.
September 4, 1979.
*1187 John E. Unsworth, Jr., New Orleans, for defendant-respondent.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Harold D. Marchand, Asst. Dist. Atty., for plaintiff-relator.
SUMMERS, Chief Justice.
Defendant Neil Sanders was charged in two bills of information with possession of phenmetrazine and possession of marijuana with intent to distribute in violation of Sections 966 and 967 of Title 40 of the Revised Statutes. He filed motions to suppress in each case and the motions were consolidated for hearing. After a hearing, the motions were granted and the evidence was suppressed. On the State's application we granted certiorari.
On November 13, 1978 Officer Henry O. Sanderson of the New Orleans Police was assigned as a plain-clothes special operator in the French Quarter. About 8:45 that evening he and Officer Keene, his partner, met a confidential informer who told them that the defendant Sanders, who was residing at 523 St. Philip Street, second floor level, rear apartment, was dealing openly in marijuana and preludin. Anyone could obtain these drugs, the informant said, by knocking on Sanders' door and saying: "Neil do you have anything for the head?"
With this information the two officers and the informant proceeded to the St. Philip Street address where the informant pointed out the exact door from which Sanders was dealing. With the permission of the officers, the informant then departed for fear that someone would recognize him.
At that time someone was standing at defendant's door. When he left, the officers approached the door, heard voices from the inside, and knocked.
Sanders answered in the nude at which time the officers said: "Neil, do you have anything for the head?," to which Sanders replied, "I have some commercial for ten dollars a bag. How much do you want?"
Sanderson inquired, "Is the stuff any good?"
Sanders went into the room, leaving the door open. He picked up a cigarette pack, removed what appeared to be a marijuana cigarette, returned to the door and handed it to Sanderson. Because of the shape of the cigarette and the odor it emitted, the *1188 officers strongly believed it to be marijuana.
Sanders again left the door open, and, in full view of the police, within the room, put five or six clear plastic bags containing green vegetable matter in a larger plastic bag and returned to the door. He placed the bag beside the door and asked, "How many do you want?"
Whereupon the officers identified themselves and placed Sanders under arrest for distribution of marijuana. He was advised of his rights.
Sanders asked them if he could get his clothes. The officers consented and entered the one-room apartment with Sanders where they seized the marijuana near the door. In the room they saw a hypodermic syringe loaded with reddish liquid lying on the floor. A jar top, a piece of tin foil and a candle were nearby, which they believed were used to cook down preludin prior to injection. They also seized this paraphernalia and advised Sanders he would be booked for possession of preludin.
On the basis of these facts and the defense contention to that effect, the trial judge decided that the State had failed to sustain its burden of proving that the information disclosing the location and nature of Sanders' activities had come from a reliable informant. It appears that he held that defendant's right of privacy had been violated without probable cause, relying on State v. Saia, 302 So.2d 869 (La.1974). He therefore suppressed the evidence.
The question here is whether the officers were justified in knocking at the door to Sanders' apartment. The facts of this case do not involve an investigatory stop such as the Saia Case. In the instant case the police did not stop defendant in a public place, they went to his door and knocked, an age old request for permission to speak to the occupant. There was no "street encounter" involved or restriction of defendant's "freedom of movement." State v. Ryan, 358 So.2d 1274 (La.1978).
There is a clear distinction between the police detaining a suspect on the street as authorized by Article 215.1 of the Code of Criminal Procedure[1] and the police knocking on a suspect's door. When stopped on the street, a suspect has no choice but to submit to the authority of the police. When the door is opened in response to a knock, it is a consent of the occupant to confront the caller. There is no compulsion, force or coercion involved in the latter situation. The police had a right to talk to Sanders if he agreed to do so.
No cause to arrest Sanders existed when he opened the door, probable cause was established later by Sanders retrieving the marijuana in the full view of the officers through the open door and when he handed them a sample to smoke. Once Sanders was arrested for this first offense and placed under arrest he allowed the police to enter his apartment while he donned his clothes. It was then that they saw the preludin in plain view.
Evidence or contraband in plain view which the police discover inadvertently, when they are in a position where they have a right to be, can be seized and introduced in evidence. See e. g., State v. Banks, 363 So.2d 491 (La.1978); State v. Schmidt, 359 So.2d 133 (La.1978); State v. Parker, 355 So.2d 900 (La.1978).
*1189 The plain view rule is set forth in State v. Brown, 370 So.2d 525 (La. 1979), as follows:
"When an officer inadvertently observes evidence of a crime from a vantage point that does not intrude upon a protected area or when that protected area is entered with prior justification, there is no violation of the search warrant rule because there has been no `search'...."
Insofar as the seizure of the preludin and its paraphernalia is concerned, the officers entered the apartment after arresting Sanders so they could keep him in sight and maintain him in custody. It was their right to protect themselves against the possibility that he might obtain a weapon or that his clothes may contain such. Accordingly, Sanders' clothes were inspected as he dressed.
Thus, there was no need to establish the reliability of the informant at the hearing. Knocking at the door violated no right of privacy; that single action by the police did not infringe on defendant's "right to be let alone." It is an almost implicit understanding and custom in this country that, in the absence of signs or warning, a residence may be approached and the occupants summoned to the door by knocking.
Defendant was free to refuse to open the door or to slam it shut once opened. His freedom of movement was never infringed upon and no search or seizure occurred except on the basis of defendant's voluntary actions.
For the reason assigned, the ruling of the trial judge suppressing the evidence is reversed and set aside, and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.
NOTES
[1] Article 215.1 provides:

"A. A law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or a misdemeanor and may demand of him his name, address and an explanation of his actions.
"B. When a law enforcement officer has stopped a person for questioning pursuant to this Article, and reasonably suspects that he is in danger of life or limb, he may search the outer clothing of such person for a dangerous weapon or for any other thing the possession of which may constitute a crime.
"C. If the law enforcement officer finds a dangerous weapon or any other thing the possession of which may constitute a crime, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person."