958 So.2d 682 (2007)
STATE of Louisiana
v.
Kareem NICHOLAS.
No. 06-KA-903.
Court of Appeal of Louisiana, Fifth Circuit.
April 24, 2007.
*684 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Thomas S. Block, Assistant District Attorneys, Twenty-Fourth Judicial District Parish of Jefferson, Gretna, Louisiana, for Plaintiff/Appellee.
Prentice L. White, Louisiana Appellate Project, Baton Rouge, Louisiana, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and CLARENCE E. McMANUS.
THOMAS F. DALEY, Judge.
Defendant, Kareem Nicholas, appeals his conviction for possession of a firearm while in possession of cocaine, a violation of LSA-R.S. 14:95(E). On appeal, he argues that the district court committed manifest error by denying his Motion to Suppress because the evidence presented at the suppression hearing indicated that the officers entered Nicholas's house without a search warrant or probable cause and they illegally confiscated items out of Nicholas' home that were not immediately visible or in plain sight. After thorough consideration of the evidence and applicable law, we affirm the conviction.
PROCEDURAL BACKGROUND
On April 12, 2006, defendant was charged by Bill of Information with possession of a firearm while in possession of cocaine in violation of LSA-R.S. 14:95(E). Defendant pled not guilty to this charge on April 24, 2006. On June 1, 2006, defendant filed Motions to Suppress Evidence and Statement, which were denied by the trial court on July 19, 2006. Defendant withdrew his not guilty plea and pled guilty to possession of a firearm while in possession of cocaine under State v. Crosby[1] on July 20, 2006. Defendant was sentenced to five years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. On July 20, 2006, defendant filed a timely Motion for Appeal, which was granted on August 10, 2006.
FACTS
At the hearing on the Motions to Suppress hearing, Detective Kevin M. Treigle of the Kenner Police Department, Narcotics Investigative Section, testified that he conducted an investigation that led to defendant's arrest on March 8, 2006. Detective *685 Treigle and Sergeant Nicholas Huth obtained information through Kenner's drug hotline of narcotics activity at 2142 Eleventh Street in Kenner. Detective Treigle testified that this was not the first complaint received regarding narcotics activity at that location, and he had made arrests at the residence before. From his experience, Detective Treigle was aware that Irvin Nicholas resided at this address.
After surveillance was conducted and foot traffic was observed going in and out of the residence,[2] Detective Treigle approached the residence with the intention to do a "knock and talk." He testified that the door was wide open. He observed defendant lying on the couch, sleeping in the living room. The officers knocked on the door frame and announced their presence. Irvin Nicholas emerged from the rear of the residence. Sergeant Huth advised him they received complaints about narcotics activity and wanted to talk. According to Detective Treigle, Irvin Nicholas invited them inside. Detective Treigle believed Irvin Nicholas was an occupant of 2142 Eleventh Street.
Detective Treigle testified, once inside, Irvin Nicholas advised them that he was living at the residence with his cousin and that he was in the process of moving out. Irvin Nicholas told them that his nephew Kareem was sleeping on the couch. After Irvin Nicholas advised them that other individuals were in the house, the individuals were summoned to the front of the residence and a protective sweep was conducted for officer safety. Irvin Nicholas was advised of his rights once they were inside of the residence.
Detective Treigle testified that a clear plastic bag containing two off-white rocks similar to crack cocaine and a steak knife were discovered in plain view on the bookshelf in the living room. Irvin Nicholas and the other individuals were then detained, and Sergeant Huth attempted to wake up defendant. Defendant awoke, and when he sat up, a handgun was observed underneath his stomach where he was lying. Defendant was detained and was advised of his Miranda rights. When asked if he had other weapons and/or narcotics on his person, defendant responded "I got a little crack in my pocket." A clear plastic bag was removed from his pocket and its contents were field tested. The contents tested positive for crack cocaine. Defendant was arrested.
Detective Treigle clarified that they did not search the residence, but only seized evidence that was found in plain view once they had secured permission to enter from Irvin Nicholas.
Irvin Nicholas testified that he was sitting on the front porch with the door half open when the police, whom he knew were narcotic detectives, arrived. He denied giving them permission to enter or search the residence, and testified that he told them the residence was not his, but was leased to his cousin, Anthony Holmes.[3] Irvin Nicholas stated he was staying at the house and had been living there since around November after the "storm,"[4] but at the time was in the process of moving.
The trial court found the evidence seized was admissible and constitutionally obtained. The trial judge explained Mr. Nicholas had apparent and actual authority to allow entry into the house and by his *686 own testimony he revealed he was a resident, although in the process of moving out. The trial court also found that the statement was constitutionally obtained after a waiver of rights was given.
ASSIGNMENT OF ERROR NUMBER ONE
Defendant argues that the trial court erred in denying his Motion to Suppress because law enforcement officers entered the residence without a valid search warrant, probable cause, exigent circumstances, good faith or consent from the legitimate owner of the residence and confiscated items not in plain view. Defendant further argues the officers did not attempt to verify the alleged complaints and they needed reasonable suspicion to knock and announce their presence. He complains any evidence or statements obtained were in violation of the Fourth Amendment and should have been suppressed.[5]
The State responds the trial court did not err in denying defendant's Motions to Suppress Evidence and Statements. The State argues that the police had valid consent to enter the residence and observed contraband in plain view. The State further argues after defendant made a free and voluntary statement admitting to having contraband on his person so the police had probable cause to seize the cocaine from his pocket.[6]
The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures.[7] If evidence is derived from an unreasonable search or seizure, the proper remedy is to exclude the evidence from trial.[8] Warrantless searches and seizures are unreasonable per se unless justified by one of the exceptions to the warrant requirement.[9] The State bears the burden of proving the admissibility of evidence that is seized without a warrant.[10] A trial court has great discretion when ruling on a Motion to Suppress, and its ruling will not be disturbed absent an abuse of that discretion.[11]
Defendant's brief focuses on the officers' entry into the residence, arguing that the evidence and statement obtained thereafter are "fruit of the poisonous tree."
The exclusionary rule bars, as illegal fruit, physical and verbal evidence obtained either during or as a direct result of an unlawful invasion.[12] The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of *687 illegality, or "fruit of the poisonous tree."[13] Louisiana Code of Criminal Procedure Article 703(A) provides that a defendant who is adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained. Thus, if entering the residence was unlawful, then the exclusionary rule would bar the admission of the subsequent physical and verbal evidence in this case.
Detective Treigle testified his intentions were to do a "knock and talk." His intentions were based upon previous complaints of narcotics activity at this residence, previous narcotics arrests at this residence, and surveillance of the residence. In State v. Sanders, 374 So.2d 1186, 1188 (La.1979), the Louisiana Supreme Court held that an officer's knocking on a door does not constitute an investigatory stop. And when a door is opened in response, it is a "consent" to confront the caller and the police then have the right to speak to the occupant if the occupant agrees. Accord, State v. Haywood, 783 So.2d at 575-576.
Although defendant argues that the officers failed to verify the complaints, there was no investigatory stop when the officers knocked on the door frame, and therefore, the reliability of the complaints did not need to be established before the officers knocked. Defendant cites State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268 in support of his argument. Robertson involves an anonymous tip that failed to generate reasonable suspicion for an investigatory detention. In the present case, the officers had reasonable suspicion to knock on the door frame after receiving information about drug activity from the hotline.
In the present case, there were discrepancies in the testimonies of Detective Treigle and Irvin Nicholas. Detective Treigle testified that the door of the residence was wide open, while Irvin Nicholas testified the door was half open. Detective Treigle testified after they knocked on the door frame and announced their presence, Irvin Nicholas came from the rear of the residence, was advised of the complaints and invited them inside. However, Irvin Nicholas testified he was sitting on the front porch when the police arrived and denied giving them permission to enter or search the residence.
A consent to search constitutes one of the exceptions to the probable cause and warrant requirements of the Fourth Amendment when it is freely and voluntarily given by a person who possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected.[14] In United States v. Matlock, 94 S.Ct. at 993, n. 7, the United States Supreme Court made clear that someone who has common authority over a residence, described as "mutual use" and "joint access and control for most purposes," may consent to a search that is valid as against a co-occupant who is not present and has not consented. Matlock relied on the concept that one co-occupant assumes the risk that the other person will give permission for a search. Id. The Louisiana Supreme Court in State v. Edwards[15] followed Matlock, as did this Circuit *688 in State v. Cambre.[16]
The State has the burden of proving the consent was given freely and voluntarily when it relies on consent to justify a warrantless search.[17] "Voluntariness is a question of fact to be determined by the trial judge under the totality of the circumstances." State v. Joseph, supra (citation omitted).
A warrantless search may be valid even if consent was given by one without authority, if facts available to the officers at the time of entry justified the officers' reasonable, albeit erroneous, belief that the one consenting to the search had authority over the premises.[18]
Detective Treigle testified that Irvin Nicholas gave the officers consent to enter the residence, not consent to search the residence. Irvin Nicholas testified that he was staying at the house and had been living there since "about November after the storm," but at the time was in the process of moving.[19] The facts presented at the Motion to Suppress support the officers' reasonable belief, that Irvin Nicholas had actual authority to allow the officers entry into the residence.[20] Although defendant argues that the officers were not in good faith, there is no indication that the officers stormed into the residence, nor is that position supported by the testimony of Irvin Nicholas. The trial court could have reasonably concluded that the police officers were allowed into the house by an occupant with apparent authority to consent.
Detective Treigle testified that he performed a protective sweep of the residence. A "protective sweep" is a quick and limited search of a premises, conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding. Maryland v. Buie, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). In Buie, the Supreme Court held that the Fourth Amendment to the United States Constitution permits a limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable *689 belief, based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene.[21] In the instant case, Detective Treigle offered no specific facts nor stated that he reasonably believed officer safety to be at issue. His testimony implies that the protective sweep was performed more as a matter of policy, rather than justification by exigent circumstances. However, the contraband in this case was not discovered during a protective sweep of the residence. Hence the justification for the sweep is not at issue.
The evidence that was seized was located in the living room, the very room into which Detective Treigle was allowed by Nicholas, and was discovered in plain view. It is well established that evidence in the open or plain view of a police officer who is legally on the premises from which he obtains the view is subject to seizure without a warrant.[22] The evidence and statement that followed the entry into the residence need not be suppressed as "fruit of the poisonous tree." As such, the trial court did not err in denying defendant's Motion to Suppress.
Accordingly, defendant's conviction is affirmed.
AFFIRMED.
NOTES
[1] State v. Crosby, 338 So.2d 584 (La.1976).
[2] It is noted that defendant stated in his brief that surveillance was not conducted.
[3] It is noted that defendant's brief suggests it is defendant's residence.
[4] Hurricane Katrina.
[5] In his Motion for Appeal, defendant only includes the denial of his Motion to Suppress Evidence without mentioning his Motion to Suppress Statement. However, when he pleaded guilty, he reserved his rights under Crosby to appeal the Motion to Suppress.
[6] It is noted that in its brief, the State justifies the seizure of the contraband found in plain view, the voluntariness of defendant's statement and the contraband found on defendant's person; however, it appears defendant is only arguing that because the entry into the residence was tainted, everything that followed was "fruit of the poisonous tree."
[7] State v. Boss, 04-457 (La.App. 5 Cir. 10/26/04), 887 So.2d 581, 585.
[8] Id. (citation omitted).
[9] State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330, 335-336 (citations omitted).
[10] LSA-C.Cr.P. art. 703(D); State v. Haywood, 00-1584 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 574 (citation omitted).
[11] State v. Haywood, supra (citation omitted).
[12] State v. Stanfield, 05-839 (La.App. 5 Cir. 3/14/06), 925 So.2d 710, 715 (citations omitted).
[13] Segura v. United States, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) (citations omitted).
[14] United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974).
[15] 97-1797 (La.7/2/99), 750 So.2d 893, 901, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999).
[16] 04-1317 (La.App. 5 Cir. 4/26/05), 902 So.2d 473, 482, writ denied, 05-1325 (La.1/9/06), 918 So.2d 1039.
[17] State v. Joseph, 04-1240 (La.App. 5 Cir. 4/26/05), 901 So.2d 590, writ denied, 05-1700 (La.2/3/06), 922 So.2d 1176 (citing State v. Taylor, 04-90 (La.App. 5 Cir. 5/26/04), 875 So.2d 962, 967, writ denied, 04-1649 (La.11/19/04), 888 So.2d 193).
[18] State v. Cambre, supra at 482 (citing Illinois v. Rodriguez, 497 U.S. 177, 185-89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); State v. Edwards, supra).
[19] This court notes that when Irvin Nicholas was arrested in this incident, he supplied this address as his.
[20] Defendant cites several cases in his brief that are distinguishable from the issue in this case. In challenging the warrantless entry into the residence, defendant cites State v. Mayo, 450 So.2d 718 (La.App. 4 Cir.1984), writ denied, 452 So.2d 176 (La.1984) and State v. Campbell, 99-0892 (La.App. 4 Cir. 1/3/01), 778 So.2d 636, judgment vacated in part by 01-0329 (La.11/2/01), 799 So.2d 1136, cases involving warrantless automobile searches. Defendant also cites State v. Jones, 02-1931 (La.App. 4 Cir. 11/6/02), 832 So.2d 382, writ denied, 02-2895 (La.12/4/02), 831 So.2d 973. However, this case involves a warrantless search of a residence, while the present case involves consent to enter the residence. Defendant cites State v. Brown, 04-1194 (La.App. 5 Cir. 4/26/05), 902 So.2d 542, writ denied, 05-1637 (La.2/3/06), 922 So.2d 1173, which involved the discovery of evidence pursuant to the execution of a valid search warrant after a warrantless entry. Defendant cites another case involving a search warrant, State v. Robinson, 03-1350 (La.App. 5 Cir. 3/30/04), 871 So.2d 575, which is inapplicable here.
[21] A protective sweep does not have to always be incident to an arrest. State v. Ledford, 40,318 (La.App. 2 Cir.10/28/05), 914 So.2d 1168, citing United States v. Gould, 364 F.3d 578 (5th Cir.2004), cert denied 543 U.S. 955, 125 S.Ct. 437, 160 L.Ed.2d 317 (2004).
[22] State v. Shed, 36,321 (La.App. 2 Cir. 9/18/02), 828 So.2d 124.