996 So.2d 618 (2008)
STATE of Louisiana
v.
Troy WOOLRIDGE.
No. 08-KA-340.
Court of Appeal of Louisiana, Fifth Circuit.
October 14, 2008.
*620 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Desirée M. Valenti, Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, Gretna, Louisiana, for Plaintiff/Appellee.
Holli A. Herrle-Castillo, Louisiana Appellate Project, Marrero, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., MARION F. EDWARDS and MADELINE JASMINE.
MADELINE JASMINE, Judge Pro Tempore.
Defendant, Troy Woolridge, appeals his convictions for one count of possession with intent to distribute heroin and one count of possession with intent to distribute marijuana, violations of LSA-R.S. 40:966(A). On appeal, he argues that the trial court erred in denying his motions to suppress evidence and statement. After thorough consideration of the law and evidence, we affirm as amended, and remand with instructions as noted below.

PROCEDURAL HISTORY
The Jefferson Parish District Attorney filed a Bill of Information charging defendant, Troy Woolridge, with one count of possession with intent to distribute heroin and one count of possession with intent to distribute marijuana, violations of LSA-R.S. 40:966(A). Defendant's motions to suppress evidence and statement were denied on January 9, 2008.[1]
Thereafter, on this same day, defendant withdrew his pleas of not guilty and pled guilty as charged to both charges pursuant to State v. Crosby,[2] reserving his right to appeal the rulings on his motions to suppress. The trial court sentenced defendant to 12 years imprisonment at hard labor on each count to run concurrently.[3] As to count one, the trial court ordered the first five years to be served without benefit of parole, probation, or suspension of sentence.[4] Further, the State agreed not to file a multiple offender Bill of Information. This timely appeal follows.

FACTS
Because this case involves Crosby pleas, the following facts were taken from the suppression hearing:
On March 25, 2006, through the early morning hours of March 26, 2006, Detective Jason Barrette of the Jefferson Parish Sheriff's Office was working on a narcotics task force in a Jefferson Parish neighborhood following numerous narcotics complaints in the area. After 9:00 p.m., Detective Barrette entered the Tallowtree and *621 Orange Blossom neighborhood in a marked police vehicle and in full uniform. Detective Barrette observed a black male leaning into the passenger side of a parked vehicle that had its parking lights on. The black male began to run when Detective Barrette approached. As Detective Barrette was chasing him, Detective Barrette observed the black male enter 1149 Orange Blossom, Apartment A, and shut the door.
Detective Barrette knocked on the apartment door several times. A black female opened the door, and Detective Barrette smelled burning marijuana coming from inside the apartment. Also, in plain view, while the door was open, Detective Barrette observed numerous small black Ziploc baggies lying on a coffee table. According to Detective Barrette, these baggies were consistent with the packaging of illegal narcotics.
Detective Barrette explained to the female what had occurred. While speaking to the female, Detective Barrette observed defendant get off the couch and run upstairs towards the back bedroom with a black plastic bag. Detective Barrette asked to speak with the owner of the residence or whoever was on the apartment's lease, and the female called defendant. Detective Barrette also testified that he observed numerous people in the apartment. Defendant came downstairs, but without the black plastic bag.
Detective Barrette spoke to defendant, who indicated the apartment was his, and explained how he had observed an unknown black male run inside the apartment and how he smelled burning marijuana coming from the apartment.[5] He also told defendant he had observed plastic bags and believed there was some type of illegal activity taking place in defendant's apartment. Defendant denied having illegal narcotics in his apartment and told the detective he could search it if he would like.
According to Detective Barrette, he entered the house only after speaking to defendant and obtaining consent. Detective Barrette testified that defendant voluntarily signed a consent to search form, consenting to the search of his apartment. A K-9 unit was requested and the apartment was searched once they arrived. A black plastic bag was discovered protruding from between the mattresses of the rear upstairs bedroom. Inside the bag, there were several large baggies of marijuana and 11 foils of brownish powder. Field tests were conducted on the recovered items and confirmed the green vegetable matter was marijuana and weighed approximately 81 grams. The 11 foils of brown powder substance tested positive for heroin.
After being advised of his constitutional rights and indicating that he understood those rights, defendant was asked why he had that amount of heroin and marijuana and he responded that he needed to make money somehow.
Although defendant admitted he signed the consent to search form, he testified that he was forced to sign the form while handcuffed in the parking lot, and after the deputy threatened to jail all of the people in the apartment.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant argues the evidence should have been suppressed in this case because the State failed to adequately *622 prove defendant freely and voluntarily consented to the search of his apartment. Defendant argues he was threatened with physical harm and was forced to sign the consent form. Further, defendant argues it is illogical that he would have consented to a search of the apartment if the facts happened as Detective Barrette claimed. Defendant further argues no other exception to the warrant requirement existed. Finally, defendant argues that if the search was illegal then the evidence and the statement should have been suppressed as fruit of the poisonous tree.
The State responds that the trial court made a credibility determination and that defendant failed to show the trial court abused its discretion in denying his motions to suppress.
The trial court denied defendant's motions to suppress after considering the credibility of the witnesses and determining Detective Barrette was more credible than defendant.
Unless justified by one of the narrowly drawn exceptions to the Fourth Amendment's warrant requirement, a warrantless search is per se unreasonable. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence that is seized without a warrant. LSA-C.Cr.P. art. 703(D); State v. Addison, 05-378, p. 8 (La.App. 5 Cir. 12/27/05), 920 So.2d 884, 890, writ denied, 06-1087 (La.11/9/06), 941 So.2d 36. A trial court has great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. State v. Nicholas, 06-903, p. 6 (La. App. 5 Cir. 4/24/07), 958 So.2d 682, 686.
The exclusionary rule bars, as illegal fruit, physical and verbal evidence obtained either during or as a direct result of an "unlawful invasion." The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of illegality, or "fruit of the poisonous tree." Nicholas, 06-903 at 6, 958 So.2d at 686-87. A defendant who is adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained. LSA-C.Cr.P. art. 703(A).
Consent to search is one of the recognized exceptions to the warrant requirement, where the consent is freely and voluntarily given by a person who possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected. Nicholas, 06-903 at 6, 958 So.2d at 687 (citing United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974)). Consent may be given orally or in writing. State v. Gomez, 06-417, p. 7 (La.App. 5 Cir. 11/28/06), 947 So.2d 81, 86. The State has the burden of proving the consent was given freely and voluntarily when it relies on consent to justify a warrantless search. Nicholas, 06-903 at 8, 958 So.2d at 688. Voluntariness is a question of fact to be determined by the trier-of-fact under the totality of the circumstances. Id.
Defendant does not argue that the officers were not authorized to knock on the apartment door. In any case, Detective Barrette did not act improperly in going to the apartment and knocking on the door after observing the black male leaning into the passenger side of a car and then running after Detective Barrette's approach. Detective Barrette observed the black male run into this particular apartment. Police officers have the same right to knock on a door as any other member of the general public. State v. *623 Haywood, 00-1584, p. 7 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 575 (citing State v. Oliver, 448 So.2d 156, 158-59 (La.App. 5 Cir.1984)). Knocking on a door does not constitute an investigatory stop and does not require reasonable suspicion. State v. Haywood, 00-1584 at 5-6, 783 So.2d at 574-75.
The issue raised by defendant in the present case involves the voluntariness of his consent. Conflicting testimony surrounding defendant's consent was presented by Detective Barrette and defendant.
Detective Barrette testified that he spoke to defendant, who indicated the apartment was his. Detective Barrette told defendant he believed there was some type of illegal activity taking place in his apartment. Detective Barrette testified that defendant denied having illegal narcotics in his apartment and told the detective he could search it if he would like. According to Detective Barrette, he entered the house only after speaking to defendant and obtaining consent. He testified that defendant voluntarily signed a consent to search form, State's Exhibit 1, consenting to the search of his apartment. Detective Barrette testified that defendant was sitting on the couch in the living room downstairs and not handcuffed when he executed the consent to search form. Detective Barrette denied that he threatened to break defendant's arm or arrest everyone in the residence.
Defendant testified Detective Barrette was not the first officer he saw at the apartment. Although defendant admitted he signed the consent to search form, he said he was in handcuffs outside in the driveway at the time. He explained that his right hand was removed from the handcuffs, but the officer twisted and squeezed his other hand when defendant said he would not sign the form. According to defendant, Detective Barrette threatened to take everyone in the residence to jail and to break defendant's arm if defendant did not sign the consent form. Defendant testified that he was forced to sign the form.
The credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier-of-fact, who may accept or reject in whole or in partthe testimony of any witness. State v. Doussan, 05-586, p. 14 (La.App. 5 Cir. 2/14/06), 924 So.2d 333, 343, writ denied, 06-0608 (La.10/13/06), 939 So.2d 372. It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier-of-fact or to reweigh the evidence. Id. The trial judge found Detective Barrette more credible than defendant. Based on the detective's testimony, the trial judge concluded that the defendant voluntarily consented to the search of his apartment. Because the search was lawful, the seizure of evidence from defendant's apartment, as well as the statement that followed the search, need not be suppressed as fruit of the poisonous tree. This Assignment of Error is without merit.

ERROR PATENT DISCUSSION
The Defendant requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990) regardless of whether defendant makes such a request.
First, the commitment reflects that defendant pled guilty to "DIST/WITD" heroin and "DIST/WITD" marijuana. According to the transcript, defendant actually pled guilty to possession with intent to distribute heroin and possession with intent to distribute marijuana. Generally, when there is a discrepancy *624 between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).
Accordingly, we remand this matter to allow the trial judge to correct the commitment to conform to the transcript and other parts of the record because the commitment appeared to indicate distribution as the charge. See State v. Addison, 05-378, p. 23 (La.App. 5 Cir. 12/27/05), 920 So.2d 884, 898-99, writ denied, 06-1087 (La.11/9/06), 941 So.2d 36
Second, in imposing defendant's sentence, the trial court provided that defendant's two sentences would run concurrently with each other as well as "with any parole time that he's serving resulting from his previous conviction." Because this sentence could be indeterminate, we remand to the trial court for clarification of defendant's sentence. See State v. Hines, 07-312, p. 7 (La.App. 5 Cir. 10/30/07), 970 So.2d 1134, 1138. In Hines, this Court recognized that unlike probation, there is no prohibition against the trial judge ordering a sentence to run concurrent with a parole revocation, but concluded the sentence, which was "`to run concurrent with any parole time,'" could be indeterminate and remanded to the district court for clarification of the defendant's sentence upon resentencing. Id.
Third, defendant pled guilty to possession with intent to distribute heroin. In the sentence for this crime, the first five years must be imposed without benefit of probation or suspension of sentence; however, parole eligibility is not prohibited. See LSA-R.S. 40:966(B)(1). In the present case, the trial judge ordered that the first five years of defendant's sentence was to be without benefit of parole, probation, or suspension of sentence.
According to LSA-C.Cr.P. art. 882(A), "[a]n illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review." This Court has previously recognized that the erroneous denial of parole eligibility under LSA-R.S. 40:966(B)(1) is a patent error.[6]
Pursuant to LSA-C.Cr.P. art. 882(A), we hereby amend the sentence to delete the word "parole" from the trial court's restriction that defendant serve the first five years of his sentence without benefit of probation, parole or suspension of sentence and remand the case to the trial court for correction of the minutes and commitment as discussed hereinabove. We also direct the district court to make the entries in the minutes reflecting these changes and direct the clerk of court to transmit the original of the minute entry to the officer in charge of the institution to which the defendant has been sentenced. See LSA-C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam).
Accordingly, defendant's conviction is affirmed. His sentence is hereby amended as indicated above, and the matter remanded with the above instructions for the district court to amend the commitment to reflect the charges to which defendant pled guilty, to clarify defendant's sentence, and to make the entries in the minutes reflecting the above changes and the amendment of defendant's sentence to reflect parole eligibility.
AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] The January 9, 2008 minute entry reflects that defendant's motion to suppress statement was denied, but instead of reflecting that his motion to suppress evidence was also denied, it reflects that his motion to suppress identification was denied.
[2] State v. Crosby, 338 So.2d 584 (La. 1976).
[3] The trial court also ordered that the sentences run concurrently with any parole time he was "serving resulting from his previous conviction." See error patent discussion.
[4] See error patent discussion regarding parole eligibility.
[5] Detective Barrette testified that he did not get a clear look at the face of the black male who ran into the apartment.
[6] See State v. Andino, 01-820, pp. 4-5 (La. App. 5 Cir. 1/15/02), 807 So.2d 944, 946; see also State v. Jackson, 05-1281, p. 4 (La.App. 4 Cir. 11/29/06), 947 So.2d 115, 118-19, writ denied, 07-0024 (La.9/14/07), 963 So.2d 996.