LILJEBERG, J.
*824 Defendant appeals his convictions and sentences for two counts of pandering. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Defendant was charged by bill of information with two counts of pandering, in violation of La. R.S. 14:84. He was arraigned and pleaded not guilty. Defendant filed motions to suppress the evidence, which were denied after a hearing. Thereafter, defendant withdrew his not guilty pleas and pleaded guilty as charged under State v. Crosby , 338 So.2d 584 (La. 1976). The trial judge sentenced him to imprisonment at hard labor for four years on each count, to run consecutively. Defendant appeals.
Because defendant pleaded guilty, the underlying facts were not fully developed at a trial. Nevertheless, the State alleged in the bill of information that on or between March 31, 2016 and June 7, 2016 (count one), and on or between March 11, 2016 and June 7, 2016 (count two), defendant, in Jefferson Parish, violated La. R.S. 14:84 in that he did entice, place, persuade, encourage, or cause the entrance of any person into the practice of prostitution, either by force, threats, promises, or by any other device or scheme, and/or maintain a place where prostitution is habitually practiced, and/or transport any person from one place to another for the purpose of promoting the practice of prostitution. The State later indicated that count one involved J.D. and count two involved E.R.[1]
Testimony from the motion to suppress hearing and evidence in the record reveals that the Jefferson Parish Sheriff's Office ("JPSO") was conducting an investigation into human trafficking and prostitution, among other things. Detective William Meetze of the JPSO vice crime squad testified that he was working undercover and set up a "date" with a certain female, J.D., at the Super 8 Motel in Metairie, Louisiana. After meeting with her at the motel, Detective Meetze arrested J.D. for prostitution. According to Detective Meetze, he advised J.D. of her rights, and J.D. said she understood her rights and wanted to make a statement. J.D., who had visible injuries to her facial area, arm, and ear, told the detective that she had suffered violence at the hands of defendant, that defendant had been her "pimp" for about four years, and that he forced her into prostitution. After J.D. positively identified defendant in a photographic lineup, officers located defendant at the Sleep Inn Hotel and arrested him.[2]
*825 LAW AND DISCUSSION
In his sole assignment of error on appeal, defendant argues that the trial judge erred by denying his motion to suppress evidence. He contends that the officer erroneously arrested him and searched his hotel room without a warrant. Defendant asserts that he gave no consent to search the room, and there were no exigent circumstances such as destruction of evidence to justify the warrantless search of these items. Defendant maintains that even though the electronic items were in plain view, they were not clearly contraband.
Defendant further maintains that the search warrants issued for the electronic items seized were defective. He claims that in the sworn affidavit, the officer omitted key items of material fact designed to mislead the commissioner in order to justify a search of the improperly seized electronic items. Defendant argues that the officer omitted important facts from the application, including that J.D. had a lengthy criminal history of prostitution and that the Super 8 motel room had not been rented to defendant but was rented to a Hispanic male the day before the police arrested defendant.
At the hearing on the motion to suppress evidence on March 24, 2017, Detective Meetze and Sergeant Keith Locascio of the JPSO testified. During their testimony, four applications for search and seizure warrants were admitted into evidence. Each application contains the same narrative of the events in this matter as follows:[3]
On Wednesday, April 6th, 2016 members of the Jefferson Parish Sheriff's Office Vice Squad were conducting an investigation into the illegal escort services providing prostitution on the Eastbank of Jefferson Parish.
Detective William Meetze searched the internet websites that are popular for prostitution advertisements. Detective Meetze located an escort/prostitute from the Backpage.com website. Members of the Vice Squad are familiar with this website as they have utilized this website and conducted numerous investigations into illegal prostitution in the past. Detective Meetze utilized the phone number in the advertisement (251-263-xxxx) and while in an undercover capacity, called the phone number. Detective Meetze spoke with a female subject, who identified herself as "Sophia", and requested an incall (a service where the customer/client goes to the escort/prostitute). "Sophia" advised Detective Meetze to proceed to the Super 8 Motel, located at 2421 Clearview Parkway in Metairie and to call her back once he arrived.
Upon arrival, Detective Meetze re-established contact with "Sophia" via the phone number in the advertisement. Upon making contact with "Sophia", she advised Detective Meetze to come to room 224.
Detective Meetze arrived at room 224 and was met by a white female who introduced herself as "Sophia" and invited him in. Upon seeing "Sophia", Detective Meetze immediately noticed "Sophia" to have several bruises to her right eye/facial area and her chin. Detective Meetze also noticed that "Sophia" caked makeup on these areas in an attempt to conceal the bruises. Once inside room 224, "Sophia" solicited Detective Meetze for sexual intercourse in exchange for $120.00 in U.S. Currency. After giving the code alerting cover detectives *826 that a crime had been committed, detectives placed "Sophia" under arrest, advised her of her rights, and identified her as J.D., W/F 11/09/1995. Detectives checked the hotel room and located a white colored Apple iPhone phone, Model A1453, Serial Number F2LRC1E3FFDN, Phone Number (504) 777-xxxx, on the nightstand. J.D. freely advised that the Samsung flip phone is the cell phone that she uses to make all her dates with, including the date made with Detective Meetze. J.D. also advised that the phone number that Detective Meetze called is through a phone application known as "Sideline."
J.D. indicated that she wished to cooperate with detectives and advised that she was brought to the New Orleans area by her pimp. J.D. then identified her pimp as Julius Murray, B/M 8/11/1981, and advised that he forces her to conduct prostitution dates which he receives all of the proceeds from the dates. J.D. stated that she was tired of being beaten by Murray and displayed additional bruises to her arms, behind her left ear, and in her left ear. J.D. relayed that she met Murray approximately four years ago when he recruited her for prostitution. J.D. explained that Murray promised her lots of money and material things and allowed her to keep most of the money made in the beginning but that things changed shortly thereafter. J.D. said that she was then forced into prostitution and that Murray was never content with her, which would result in Murray being violent with her by physically abusing her and threatening her while displaying a handgun at times.
J.D. advised that she and Murray came to New Orleans and on March 31st, 2016 Murray rented a room at the Sleep Inn and Suites, located at 4601 N I10 Service Road in Metairie. J.D. advised that Murray posted advertisements on Backpage.com in the escort section. Once a client would call, Murray would direct her on how to fix her hair and what to wear. J.D. said that if a white guy would arrive driving a nice car, she would be required to get as much money from him as possible, by raising the price of the date or asking for a tip. J.D. advised that she had several dates while at the Sleep Inn and Suites and that Murray decided to get a second hotel room at a different hotel in an attempt to conceal their nefarious activities from hotel management.
On April 3rd, 2016 Murray rented a hotel room at the Super 8 Motel, located at 2421 Clearview Parkway in Metairie. J.D. advised that on the evening of April 3rd, Murray posted her advertisement in the escort section of Backpage.com. J.D. advised that Murray did not inform her of his intentions, therefore she fell asleep. J.D. said that she missed several telephone calls of potential clients during that time. Because of this, Murray became very irate with her and began to strike her in the face and head area with a closed fist. J.D. advised that she was able crawl [sic] under the vanity in the bathroom where Murray could no longer strike her with his fist. J.D. said that Murray then began to kick her and kicked her several times in the chest area. Murray then dragged her from under the vanity and continued to strike her until she lost consciousness. J.D. said that when she came to, Murray grabbed her by the hair, forced her head against the wall, and pressed a black colored semi-auto handgun into her left ear while stating "Bitch don't play with me, where's my money?". J.D. said that she was then made to stand in a corner of the room until he received a telephone *827 call from a client and made a prostitution date.
J.D. was transported to the Jefferson Parish Sheriff's Office Detective Bureau where she supplied Detective Meetze with a video statement detailing the above incident. J.D. was presented with a photographic lineup which J.D. positively identified J.D. [sic].
Detectives relocated to the lobby of the Super 8 Motel and ascertained a copy of the hotel registration for room 224, which showed the room registered to Julius Murray on April 3rd, 2016.
Detectives learned that Murray was currently at the Sleep Inn and Suites in room 502. Detectives relocated to the Sleep Inn and Suites and made contact with Julius Murray. Murray was advised of his rights as per the Miranda decision and placed under arrest for Human Trafficking, Second Degree Battery, and Aggravated Assault with a Firearm. Detectives checked room 502 and located a black colored Apple iPhone, Model A1453, FCC ID BCG-E2642A, IMEI 352035063027684, Phone Number (619) 384-xxxx, with black and white case on a wooden console, a purple colored HP laptop computer, Model Number 11-r015wm, Serial Number 5CD5463CXC, with charger on the desk/dresser, and a Super 8 key card in a sleeve marked room 236. A search incidental to arrest revealed Murray to be in possession of a black colored Sandisk micro HC 1 8 GB memory card, located in his watch pocket.
It was later revealed by J.D. that Murray utilizes her laptop computer (the HP laptop computer) to post her advertisements on Backpage.com. J.D. also advised that Murray carries the memory card (the Sandisk memory card) on him at all times, even sleeping with it. J.D. could not advise why Murray carries the memory card or what it may contain.
Based on the above information and prior investigations regarding prostitution related crimes, vice investigators have learned that prostitutes keep in constant communication with their "pimps" through their cell phones. Therefore, investigators seized both Apple iPhones.
Sergeant Locascio testified at the suppression hearing that he is the supervisor of the JPSO vice squad, and that he participated in the investigation involving defendant. He asserted that he and Detective Steven Abadie went to the Sleep Inn Hotel at 4601 North I-10 Service Road after they learned that defendant was staying there. When they arrived, they confirmed that defendant had rented room 502. Sergeant Locascio explained that they spoke with hotel staff and, based on the officers' experience and their relationships with hotels they frequent regularly, the hotel staff terminated defendant's rental agreement due to his suspicious activity, indicated they wanted defendant off the premises, and authorized them to evict defendant. Thereafter, the officers went to defendant's room and knocked on the door.[4] Sergeant Locascio testified that defendant answered the door, at which time they arrested him and advised him of his rights.
Sergeant Locascio explained that once defendant was detained, there was a search incident to arrest. During that search, Sergeant Locascio located on defendant's person a micro memory card in the coin pocket of his pants. Sergeant Locascio testified that they also observed and *828 seized a Super 8 hotel key, J.D.'s HP laptop computer, defendant's iPhone, miscellaneous paperwork with females' names, addresses, and emails on the desk and in the dressing area, and a backpack on the floor. He noted that J.D. claimed defendant had a gray knapsack and an HP computer that belonged to her. Sergeant Locascio stated that in his experience as an officer, he has found evidence on cell phones and laptop computers with respect to vice investigations. Sergeant Locascio also indicated that there were exigent circumstances suggesting that evidence was about to be destroyed or disposed of.
Detective Meetze also testified at the suppression hearing. He stated that officers found defendant at the location provided by J.D., and defendant was in possession of several items J.D. had described to him.[5] After defendant was arrested, Detective Meetze applied for search warrants for a white Apple iPhone, a black Apple iPhone, a purple HP laptop computer, and a micro HC memory card.
Detective Meetze testified that the purpose of the search warrant for the white Apple iPhone was to show communications between him and J.D., to determine if there were any other contacts between her and potential "pimps," or anybody forcing her to engage in prostitution, or to determine whether there were any other females in the area engaging in prostitution. He further testified that in his request for a search warrant, he noted that police were aware that prostitutes and pimps maintain communication with one another via cell phone or text messaging.
Additionally, Detective Meetze testified at the hearing that he was aware that J.D. had been arrested twice for prostitution at the beginning of 2016. He noted that J.D. told him that defendant had been her pimp for approximately four or five years. He also stated that J.D. told him that defendant had pistol-whipped her, that defendant had pointed a gun at her, and that the injury in her ear was a result of defendant sticking a gun in it. Detective Meetze testified that no gun was found. However, he saw J.D.'s injuries and they were corroborated by photographs taken after her arrest. He acknowledged that his conversations with J.D. were audio and video recorded.
Following the testimony at the suppression hearing, as well as arguments by counsel for defendant and the State, the trial judge denied the motion to suppress the evidence,[6] stating:
All right. First of all, I do find that there's probable cause for the warrants. The warrants were not defective. And let me note for the record that unless omissions from an affidavit supporting a search warrant are willful or calculated to conceal information that would indicate that there's not probable cause or indicate other factual information in the affidavit is tainted, an omission will not change an otherwise good warrant from a bad one. And I'm not suggesting that there were even omissions of anything that was material, but to the extent that it was argued that there was no evidence that any omission was willful or calculated to conceal information.
*829 The motion to suppress evidence is denied.
The Fourth Amendment to the United States Constitution and Article I, Section 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Burns , 04-175 (La. App. 5 Cir. 6/29/04), 877 So.2d 1073, 1075. It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable subject only to a few specifically established and well-delineated exceptions. State v. Stone , 94-155 (La. App. 5 Cir. 7/26/94), 641 So.2d 652, 655, writ denied , 95-0631 (La. 1/6/97), 685 So.2d 129.
In a hearing on a motion to suppress, the State bears the burden of establishing the admissibility of evidence seized without a warrant. La. C.Cr.P. art. 703(D). The trial court is afforded great discretion in ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. State v. Lee , 05-2098 (La. 1/16/08), 976 So.2d 109, 122, cert. denied , 555 U.S. 824, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008).
The first issue is whether the police had the right to knock on the door of the hotel room that defendant had rented.
Knocking on a door does not constitute an investigatory stop and does not require reasonable suspicion. State v. Sanders , 374 So.2d 1186, 1188 (La. 1979) ; State v. Oliver , 448 So.2d 156, 158 (La. App. 5 Cir. 1984). In Sanders , the Louisiana Supreme Court found that when a door is opened in response to a knock, it is a consent of the occupant to confront the caller, and there is no compulsion, force, or coercion involved. The Court further noted that the defendant was free to refuse to open the door or to slam it shut once opened and that his freedom of movement was never infringed upon, and no search or seizure occurred except on the basis of the defendant's voluntary actions. Sanders , 374 So.2d at 1189.
In State v. Haywood , 00-1584 (La. App. 5 Cir. 3/28/01), 783 So.2d 568, 575-76, this Court, citing Sanders and Oliver , found that the police officers were justified in knocking on the hotel room door to investigate a complaint based on an anonymous tip because reasonable suspicion of criminal activity was not required for the police to knock on a door and knocking on a door did not constitute an investigatory stop.
In the instant case, Sergeant Locascio testified that once Detective Meetze advised them that J.D. had positively identified defendant from a photographic lineup, they went to the room defendant had rented and knocked on the door. Sergeant Locascio indicated that defendant opened the door, after which they arrested him and advised him of his rights. The foregoing case law indicates that defendant was free to refuse to open the door or to slam it shut once he opened it, and that his freedom of movement was not infringed upon. As such, the police officers had the right to knock on the door of the hotel room defendant had rented.
The next issue is whether the police had probable cause to arrest defendant after he opened the door. Probable cause to arrest exists when the facts and circumstances within an officer's knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a man of average caution in the belief that the accused has committed an offense. State v. Scales , 93-2003 (La. 5/22/95), 655 So.2d 1326, 1331, cert. denied , *830 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996). Probable cause to arrest is not absolute cause, and to determine its existence, courts must examine facts and circumstances within the arresting officer's knowledge in light of the experience of reasonable people, not legal technicians. Id.
In the instant case, the evidence indicates that the facts and circumstances within the officers' knowledge were sufficient to justify the belief that defendant had committed an offense. Detective Meetze set up a prostitution date with J.D. at a hotel. When he arrived, he noticed that J.D. had numerous bruises to her facial area. J.D. then advised the detective that defendant was her pimp and that he forced her to conduct prostitution dates and to give him the money she earned from those dates. J.D. also advised the detective that defendant physically abused her. She told the officers that defendant could be located at the Sleep Inn Hotel in room 502, and she positively identified defendant in a photographic lineup. In light of the foregoing, the police had probable cause to arrest defendant.
The next issue is whether the officers lawfully seized evidence on defendant's person and in the hotel room after they arrested him. In a search incident to a lawful arrest, a police officer can search the suspect's person and the area within his immediate control in order to remove weapons and prevent destruction of evidence. State v. Leonard , 11-363 (La. App. 5 Cir. 11/15/11), 80 So.3d 535, 544, writ denied , 12-14 (La. 8/22/12), 97 So.3d 356.
Police may lawfully seize evidence without a warrant under the "plain view" doctrine when: 1) there is prior justification for an intrusion into the protected area; and 2) it is immediately apparent, without close inspection, that the items seized are evidence or contraband. State v. Tate , 09-619 (La. App. 5 Cir. 2/9/10), 33 So.3d 292, 300-01 ; Horton v. California , 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). "Under the plain view doctrine, if police are lawfully in a position from which they view an object that has an incriminating nature that is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." State v. Leger , 05-0011 (La. 7/10/06), 936 So.2d 108, 155, cert. denied , 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007) ; Horton , 496 U.S. at 136-137, 110 S.Ct. at 2308. The "plain view" exception does not require a police officer to be certain that the object in plain view is contraband; it simply requires that the officer have probable cause to believe the item in question is either evidence and/or contraband. Tate , 33 So.3d at 301.
In the instant case, Sergeant Locascio testified that after defendant was arrested, he searched defendant's person and found a micro memory card in the coin pocket of defendant's pants. The memory card was properly seized in the search incident to arrest.
When they arrested defendant in his hotel room, the officers observed in plain view a black iPhone and a laptop computer, among other things. Detective Meetze stated in his affidavit that during prior investigations regarding prostitution related crimes, vice investigators have learned that prostitutes keep in constant communication with their pimps through their cell phones. Sergeant Locascio testified that in his experience, he has found evidence on cell phones and laptop computers with respect to vice investigations. The officers had probable cause to believe that the items seized, which were in plain view, were either evidence and/or contraband.
Defendant next argues that the search warrants issued for the electronic *831 items seized were based on omissions of material fact and were, thus, defective. He argues that the officer omitted from the search warrant application that J.D. had a lengthy criminal history of prostitution and that the Super 8 motel room had not been rented to defendant but was rented to a Hispanic male the day before the police arrested defendant. Defendant asserts that the search warrants were based solely on the statement of a woman arrested by an undercover officer for prostitution and with no corroboration, surveillance, or indicia of reliability.
As a general rule, searches and seizures must be conducted pursuant to a validly executed search warrant or arrest warrant. State v. Holmes , 08-719 (La. App. 5 Cir. 3/10/09), 10 So.3d 274, 278, writ denied , 09-0816 (La. 1/8/10), 24 So.3d 857. "A search warrant may issue only upon probable cause established to the satisfaction of a magistrate, by the affidavit of a credible person, particularly describing the person or place to be searched and the things to be seized." Lee , 976 So.2d at 122.
Probable cause for the issuance of a search warrant exists when the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place that is to be searched. Lee , 976 So.2d at 122. The facts establishing probable cause for the warrant must be contained within the four corners of the affidavit. State v. Green , 02-1022 (La. 12/4/02), 831 So.2d 962, 969. An affidavit supporting a search warrant is presumed to be valid, and the defendant has the burden of proving that the representations made in the affidavit are false. State v. Dee , 09-712 (La. App. 5 Cir. 2/23/10), 34 So.3d 892, 899, writ denied , 10-0705 (La. 10/29/10), 48 So.3d 1097.
The magistrate's determination of probable cause to issue a search warrant is entitled to significant deference on review, and "marginal cases should be resolved in favor of a finding that the issuing magistrate's judgment was reasonable." State v. Rodrigue , 437 So.2d 830, 833 (La. 1983). The reviewing court must simply insure that under the totality of the circumstances, the issuing magistrate had a "substantial basis" for concluding that probable cause existed. Green , 831 So.2d at 969 ; Illinois v. Gates , 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
In the instant case, we find there was sufficient probable cause for issuance of the search warrants. The affidavits for the search warrants were lengthy and very detailed regarding the facts and circumstances surrounding the offenses: namely, that the JPSO was investigating illegal escort services; that the officer made a prostitution date with J.D.; that when she arrived and offered her services for money, she was arrested for prostitution; that the officer noticed the bruising on J.D.'s facial area; that J.D. informed him that defendant was her pimp and physically abused her on a regular basis; that in his experience prostitutes and their pimps communicated by cell phones; and, that J.D. stated that she used her computer to post her advertisements on backpage.com.
Defendant argues that the affidavits for the search warrants were defective because they did not include that J.D. was reliable or that the Super 8 motel room had been rented by another person; however, those alleged omissions did not affect the accuracy of the affidavits. In establishing that an informant's tip is sufficient to provide a basis for a finding of probable cause, the affiant should include statements about the informant's reliability. Dee , 34 So.3d at 899. However, it is noted that J.D. was not merely an informant, but *832 rather a victim, and thus, statements regarding her reliability in the affidavits were not required. Further, the information regarding the renting of the motel room to another person was not relevant as to whether there was probable cause to search the cell phones, computer, and memory card for evidence of the pandering offenses. The search warrants were supported by probable cause and were not defective.
In light of the foregoing, we find that the trial judge did not err by denying defendant's motions to suppress evidence.
ERRORS PATENT
The record was reviewed for errors patent, according to La. C.Cr.P. art. 920 ; State v. Oliveaux , 312 So.2d 337 (La. 1975) ; and State v. Weiland , 556 So.2d 175 (La. App. 5 Cir. 1990). No errors requiring corrective action were noted.
DECREE
For the foregoing reasons, we affirm defendant's convictions and sentences.
AFFIRMED

The victim's initials are used under the authority of La. R.S. 46:1844(W), which allows this Court to identify a crime victim who is a minor, a victim of a sex offense, or a victim of a human trafficking related offense by using his or her initials.

A more detailed recitation of the facts is set forth below in the narrative of events included with the applications for search warrants.

The phone numbers were redacted to protect the privacy of the parties.

He explained that they obtained a room key and attempted to use it, but it did not work, so they knocked on the door instead.

Detective Meetze testified that he did not participate in apprehending defendant because he was at the bureau taking J.D.'s statement at that time.

After the hearing on the motion to suppress, defendant filed a pro se Motion to Suppress the Evidence. In that motion, defendant argued that the evidence sought to be used against him was unlawfully and illegally obtained. The trial judge denied that motion as well.