TERRI F. LOVE, Judge.
hKiyon Jefferson (“Mr. Jefferson”) appeals his conviction for possession of two hundred or more grams but less than four hundred grams of crack cocaine. He alleges that the trial court erred in denying his motion to suppress the evidence as the investigating agents did not have probable cause to arrest him when they arrived at his residence; and thus, the agents were not justified in conducting a protective sweep. Because the sweep was unjustified, Mr. Jefferson contends the evidence found in plain view which prompted the agents to obtain a search warrant and the evidence subsequently seized pursuant to the warrant violated his Fourth Amendment rights. We find that given the totality of the circumstances, the agents were authorized to conduct a protective sweep as the threat to officer safety created an exigent circumstance. We also find that because the sweep was justified, the agents had probable cause to obtain a search warrant when they found incriminating evidence in plain view in the master bathroom. Therefore, we find the trial court did not err in denying Mr. Jefferson’s motion to suppress.

IsPROCEDURAL HISTORY

In June 2011, the State filed a bill of information charging Kiyon Jefferson (“Mr. Jefferson”) in case number 368-907(B) with possession of two hundred or more grams but less than four hundred grams of crack cocaine, a violation of La. R.S. 40:967(F)(Z )(b). In November 2011, a hearing on the motions was held, and the trial court found probable cause and denied Mr. Jefferson’s motion to suppress the evidence. Mr. Jefferson sought supervisory review and this Court denied the writ.[1] Prior to trial, Mr. Jefferson indicated his desire to represent himself, against the advice of his defense counsel. The trial court questioned Mr. Jefferson and concluded that Mr. Jefferson could represent himself with the condition that he allow his appointed counsel to assist him. In January 2013, a bench trial was held on all the charges. The trial court found Mr. Jefferson guilty in the present case of La. R.S. 40:967(F)tf)(b). In February 2013, the trial court denied Mr. Jefferson’s motions for new trial and for post-verdict judgment of acquittal. The trial court then sentenced Mr. Jefferson to twenty-two years at hard labor and ordered him to pay a fine of $100,000. Through counsel, Mr. Jefferson files this appeal as it relates to his conviction in case number 368-907(B).

FACTUAL BACKGROUND

At the motion to suppress, Agent Jason Saltalmachia (“Agent Saltalmachia”) of the St. Bernard Sheriffs Office, Narcotics Unit, testified that in April 2011, he received information from a confidential source that there was possible drug activity at the residence of a black male living at 104 Livingston Avenue in Arabi. The agent testified that he had never used the confidential source before, but the source approached him with the information. Agent Saltalmachia stated that he |3and Agent Tommy Duplessis (“Agent Duples-sis”) drove by the residence at that ad *238 dress. The agents observed a white GMC Jimmy parked in the driveway. They ran the license plate number and learned the vehicle was registered to Kiyon Jefferson at the same address on Livingston Avenue. The agents also ran a criminal history check on Mr. Jefferson. In addition to obtaining a photograph of him, the agents learned that he had a criminal history including several drug offenses.
After meeting with several officers in the Street Crimes Unit, the agents elected to conduct a “knock and talk” investigation. Accompanying Agents Saltalmae-hia and Duplessis were Lieutenant Chris Cousins, Corporal Leandor Morgan, and Agent Scott Maitrejean, and Agent Chris Encartes. In the early afternoon, Agents Saltalmaehia and Duplessis along with accompanying agents, approached Mr. Jefferson’s door and knocked. Agent Saltalmaehia testified that he immediately recognized Mr. Jefferson from his photograph when he answered the door. The agent identified himself and informed him that they were investigating a report of possible drug trafficking at the residence. He asked Mr. Jefferson if they could come inside and speak with him, and Mr. Jefferson agreed.
Entering the residence, the agents immediately detected a strong aroma of burnt marijuana. While speaking with Mr. Jefferson, the agents heard a commotion from the back of the residence and dogs barking. At the suppression hearing, Agent Saltalmaehia testified that while standing in the living room, they heard “some dogs barking in the back,” and “other subjects moving around, some knocking stuff.” At trial, Agent Duplessis corroborated Agent Saltalmachia’s testimony, stating there was a noise in the back of the residence, as if people were moving around.
|4Agent Saltalmaehia testified that he and Agent Duplessis remained in the living room with Mr. Jefferson, and the other agents cleared the residence for their safety. While performing the protective sweep, two agents found “kids in the bedroom.” Agent Saltalmaehia stated at some point, Mr. Jefferson’s fiance, LaShaun Robinson (“Ms. Robinson”) was called to inform her she was needed at the residence to take care of the children. Also, during the sweep Lieutenant Chris Cousins (“Lieutenant Cousins”) asked Agent Saltalmaehia to come to the master bedroom. On the counter in the master bathroom, Agent Saltalmaehia observed in plain view a large off-white rock-like substance and several smaller rock-like substances that were individually packaged in clear plastic. Agent Saltalmaehia returned to the living room and advised Mr. Jefferson of his Miranda rights. Agents Saltal-maehia and Duplessis then left the residence in order to secure a search warrant for the residence while the other agents remained at the scene.
After obtaining a search warrant, Agents Saltalmaehia and Duplessis returned to 104 Livingston Avenue, presented Mr. Jefferson with the search warrant and again advised him of his rights. Agent Saltalmaehia then asked Mr. Jefferson if there was any other contraband in the residence that the agents would find during the execution of the warrant.
Mr. Jefferson told Agent Saltalmaehia that the agents would find a “quarter bird,” street slang for approximately nine ounces of crack cocaine, in the master bedroom closet. The agents began searching the closet and found a black garbage can with a black garbage bag inside. Inside the garbage bag was a brown paper bag containing eight separate bags of an off-white substance. The substance later field-tested positive for crack cocaine.
*239 I .¡Inside the same closet Agent Encartes found a tan dress shirt. In each of the front pockets he located cash in mostly small bills and additional cash in the pocket of a pair of pants inside the room, totaling about $1500. In the master bedroom, the agents found in an ashtray hand-rolled cigarettes containing vegetable matter that tested positive for marijuana. Inside the kitchen cabinet, the agents found glass jars that contained a white paste-like substance. Additionally, the agents seized a digital scale with white powder residue. In their search, the agents found documents which they believed connected Mr. Jefferson to the residence, including a Cox communication cable bill and an auto insurance bill, both in Mr. Jefferson’s name for that address.
Agent Saltalmaehia testified that Mr. Jefferson was then transported to the agents’ office and interviewed. At the office, Agent Saltalmaehia, in the presence of Agent Duplessis, advised Mr. Jefferson of his rights and had Mr. Jefferson sign a “Rights of Arrestee” form. Mr. Jefferson expressed his wish to waive his rights. He informed Agent Saltalmaehia that all the items found in the house belonged to him, and that Ms. Robinson was not aware he was involved in narcotics activity. Mr. Jefferson explained that he paid $4,000 for the cocaine and that he planned to process the powder cocaine into crack cocaine and package it into $25 rocks to sell for a net profit of about $16,000. Agent Saltalmae-hia testified that Mr. Jefferson explained to him that he used the glass jars found in the kitchen cabinet to turn the powder cocaine into crack cocaine.
At trial, Agent Saltalmaehia stated that later Mr. Jefferson gave a different account and claimed that the drugs were planted in his house by New Orleans police department narcotics officer, Jason Gagli-ano (“Agent Gagliano”). Agent | fiGagliano testified that he had never seen Mr. Jefferson before nor had he been to Mr. Jefferson’s house.
Agent Saltalmaehia further testified that in April 2011, Mr. Jefferson changed his version of the facts again. Mr. Jefferson claimed that he was unaware that the contraband was in the residence and that he came across it while cleaning and assumed it belonged to Ms. Robinson’s uncle.
Additionally, Agent Saltalmaehia testified that the substance suspected of being crack cocaine was analyzed, and the crime lab reported that it tested positive for cocaine, the total weight being 248.16 grams.
Mr. Jefferson called no witnesses to testify. After consulting with his appointed counsel, Mr. Jefferson advised the court that he did not wish to testify on his own behalf.

ERROR PATENT

A review of the record reveals no errors patent.

STANDARD OF REVIEW

An appellate court reviews a trial court’s ruling on a motion to suppress under the abuse of discretion standard. See La.C.Cr.P. art. 703; State v. Wells, 08-2262, p. 5 (La.7/6/10), 45 So.3d 577, 581. Although it is well-settled that an appellate court should review a trial court’s ruling under a deferential standard with regard to factual determinations, its legal findings are subject to de novo standard of review. State v. Caliste, 12-1548, p. 2 (La.App. 4 Cir. 6/14/13), 131 So.3d 902; State v. Hunt, 09-1589, p. 6 (La.12/1/09), 25 So.3d 746, 751 (citation omitted). Likewise, an appellate court may review the testimony adduced at trial, in addition to the testimony adduced at a suppression hearing, in determining the correctness of the trial *240 court’s pre-trial ruling on a motion to suppress. State v. Leger, 05-0011, p. 10 (La.7/10/06), 936 So.2d 108, 122. State v. Sherman, 04-1019, p. 1 (La.10/29/04), 886 So.2d 1116; State v. Green, 94-0887, p. 11 (La.5/22/95), 655 So.2d 272, 280.

FOURTH AMENDMENT

The Fourth Amendment protects “the right of the people to be secure in their ... houses ... against unreasonable searches and seizures.” U.S. Const, amend. IV. See also La. Const. Art. I, § 5. “Warrantless searches are per se unreasonable under the Fourth Amendment, ‘subject only to a few specifically established and well-delineated exceptions.’” State v. Bell, 09-0574, p. 4 (La.App. 4 Cir. 12/9/09), 28 So.3d 502, 506 (citing Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). Evidence in this case was seized from within Mr. Jefferson’s home pursuant to a search warrant; however, Mr. Jefferson objects to the manner in which the search warrant was obtained. He claims the agents lacked the requisite probable cause to obtain the search warrant because the protective sweep that led to the discovery of the cocaine in plain view was unjustified. For these reasons, Mr. Jefferson urges this Court to find that the trial court erred in denying his motion to suppress.
After receiving information that Mr. Jefferson was allegedly involved in narcotics activity, Agents Saltalmachia and Duplessis decided to conduct a “knock and talk” investigation. In State v. Warren, 05-2248, p. 5 (La.2/22/07), 949 So.2d 1215, 1221, the Louisiana Supreme Court noted,
“police officer[s], who possess some information that they believe warrants further investigation, but that is insufficient to constitute probable cause for a search warrant, approach the person suspected of engaging in illegal activity at the person’s residence (even knock on the front door), identity themselves as police officers, and request consent to search for the suspected illegality or illicit items.”
IsThe Court went on to state, “[t]he prevailing rule is that absent a clear expression by the owner to the contrary, police officers, in the course of their official business, are permitted to approach one’s dwelling and seek permission to question an occupant.” Id., 05-2248, p. 6, 949 So.2d 1215, 1222. See also State v. Seiler, 12-0389, p. 1-3 (La.5/25/12), 89 So.3d 1159, 1161.
In this case, there were two warrantless entries into Mr. Jefferson’s home: the initial entry through Mr. Jefferson’s front door and a subsequent entry into his master bedroom and bathroom. We first address the agents’ initial entry through the front door.
The investigating agents knocked on the front door of 104 Livingston Avenue and after Mr. Jefferson answered the door, the agents identified themselves and explained the purpose of their visit. The agents explained that they received a tip that the residence might be a place of drug activity and that they wanted to ask him some questions. At the agents’ request, Mr. Jefferson then allowed the narcotics agents to enter the residence. Because Mr. Jefferson willingly consented to the agents’ request to enter his home, the initial entrance through the front door and into Mr. Jefferson’s living room was lawful.
Once inside, the agents noticed the strong aroma of burnt marijuana and heard dogs barking and a commotion as if people were moving around in the back of the residence. Agent Saltalmachia testified that at that point, the accompanying officers conducted a protective sweep of the residence. The question before this *241 Court is whether the subsequent entry and protective sweep into the rest of Mr. Jefferson’s residence was justified.
The United States Supreme Court in Maryland v. Buie, 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), established that police may conduct a “protective sweep of |flthe premises as part of permissible ‘reasonable steps to ensure their safety after, and while making, the arrest.’ ” In Buie, the defendant and another individual were suspected of an armed robbery. Id., 494 U.S. at 328, 110 S.Ct. 1093. The police obtained arrest warrants for both suspects and executed the arrest for Buie at his residence. Id. Upon arresting Buie after he emerged from the basement, a fellow officer entered the basement to conduct a protective sweep to ensure no one else was inside the basement. Id. The officer seized a red running suit, matching the description of one worn during the robbery. Id. Buie sought to suppress the running suit; however, the trial court denied the motion to suppress, and the running suit was introduced into evidence. Id. The United States Supreme Court held, that “the Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene.” Id., 494 U.S. at 325, 110 S.Ct. at 1093.
Mr. Jefferson suggests to this Court that the Buie Court’s reasoning relied heavily on the fact that the protective sweep in that case was incident to an arrest. Thus, he alleges that the protective sweep in this case was unjustified as the agents were not at his residence to make an arrest but to conduct an investigation. We disagree.
The Supreme Court’s ruling in Buie focused on the reasonableness analysis of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Specifically, the Supreme Court found that the law enforcement’s objectives, avoiding threats to officer safety, paralleled those in Terry. The Court in Buie noted, “unlike an encounter on the street or along a highway, an in-home arrest puts the officer at the disadvantage |inof being on his adversary’s ‘turf.’ An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings.” Buie, 494 U.S. at 333, 110 S.Ct. at 1098. Thus, the Supreme Court held:
... that as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.
Buie, 494 U.S. at 334, 110 S.Ct. at 1098. Notably, the Supreme Court’s ruling in Buie left unanswered, and the issue presently before this Court, whether a protective sweep is valid in non-arrest situations.
In United States v. Taylor, 248 F.3d 506, 510 (6th Cir.2001), investigating officers were given consent to enter a home, and once lawfully inside they observed in plain view a marijuana stem on a coffee table. The court in Taylor held that investigating officers lawfully inside a home based on consent must first observe incriminating evidence in plain view that rises to the level of probable cause before *242 reasonable suspicion justifies a protective sweep. Id. at 514.
Likewise, courts have previously recognized that the presence of the odor of marijuana where law enforcement is lawfully positioned provides sufficient grounds to search. State v. Risin, 02-0100, p. 2 (La.App. 4 Cir. 1/22/02), 807 So.2d 1042, 1043. (“the presence of the odor of marijuana emanating from a stolen vehicle lawfully stopped is sufficient grounds to search the vehicle because one has no expectation of privacy in such circumstances.”) Thus, “there is no reasonable expectation of privacy from lawfully positioned officers with inquisitive nostrils.” Id.
| n Moreover, a warrantless search is permitted when “police have a reasonable belief that exigent circumstances require immediate action and there is no time to secure a warrant.” State v. Warren, 05-2248, p. 9 (La.2/22/07), 949 So.2d 1215, 1224 (citing United States v. Lenoir, 318 F.3d 725, 730 (7th Cir.2003)). Police reasonably fearing for the safety of those present is one such circumstance where a warrantless search is permitted. Id., See also Figg v. Schroeder, 312 F.3d 625, 639 (4th Cir.2002). (“The exigent circumstances exception to the warrant requirement ‘basically encompasses officer safety and the destruction of easily-disposed evidence.’ ”); United States v. Richardson, 208 F.3d 626, 629 (7th Cir.2000). Thus, as the Louisiana Supreme Court pointed out in Warren, 05-2248, p. 11, 949 So.2d at 1224-25, “[i]n these limited situations, the need for effective law enforcement trumps the right of privacy and the requirement of a search warrant, thereby excusing an otherwise unconstitutional intrusion.” In order for the exigent circumstance rule to apply, however, law enforcement must not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment. See Kentucky v. King, — U.S. —, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011).
The Louisiana Supreme Court in Warren stated:
The relevant focus is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced agent to believe that evidence might be destroyed or removed before a warrant could be secured. Marshall, 157 F.3d at 482.
Exigent circumstances justify a warrant-less entry, search, or seizure when “police officers, acting on probable cause and in good faith, reasonably believe from the totality of the circumstances that (a) evidence or contraband will imminently be destroyed or (b) the nature of the crime or character of the suspect(s) pose a risk of danger to the arresting officers or third persons.” United States v. Kunkler, 679 F.2d 187, 191-192 (9th Cir.1982) (footnote omitted). The government bears the burden of showing specific and articulable facts to justify the finding of exigent circumstances. LaLonde v. County of Riverside, 204 F.3d 947, 957 (9th Cir.2000) (citing United States v. Shephard, 21 F.3d 933, 938 (9th Cir.1994)) (quoting United States v. Driver, 776 F.2d 807, 810 (9th Cir.1985)).
Warren, 05-2248, p. 11-12 (La.2/22/07), 949 So.2d 1215, 1225 (emphasis added).
Here, the agents received confidential information that there was possible drug trafficking at 104 Livingston Avenue. After running a criminal background check, the agents learned that Mr. Jefferson had several criminal drug arrests. The agents decided to conduct a “knock and talk” investigation in order to obtain more information. Because Mr. Jefferson willingly invited the agents inside, they *243 were lawfully positioned inside his home. Upon entering Mr. Jefferson’s home, the agents immediately detected the strong odor of marijuana. Consequently, the agents had reasonable belief that Mr. Jefferson or someone in the residence had been in possession of marijuana, a chargeable offense; and thus, the agents had probable cause to search. See Seiler, supra (detective had probable cause to search home after he smelled a strong odor of marijuana in defendant’s home and saw marijuana in plain view); State v. Allen, 10-1016 (La.5/7/10); 55 So.3d 756 (the detection of the odor of marijuana gave the officer probable cause to search the interior of defendant’s vehicle for contraband). Agents Saltalmachia and Du-plessis testified that shortly after entering the residence and detecting the odor of marijuana, they heard a commotion in the back of the house, as if people and things were moving around, and dogs barking. Agent Saltalmachia testified that the agents went through the residence to “clear the house for officer safety, [to] make sure nobody in the back [sic] trying to ambush us.”
In this case, the agents were aware of the possible criminal nature of the activities taking place at the residence and the suspect’s criminal background when they approached Mr. Jefferson’s home. Further, the immediate detection of | ^marijuana smoke coupled with the sounds of people moving around and dogs barking in the back of the house, gave rise to the agents’ reasonable fear that others may be in the house posing a threat to officer safety, prompting the protective sweep of the house. Given that reasonableness is the cornerstone of the Fourth Amendment and the totality of the circumstances, we find that the trial court did not err in finding that the agents were justified in their belief that the threat to officer safety created an exigency warranting a protective sweep.

PLAIN VIEW EXCEPTION

Finding the protective sweep justified, we address the evidence observed in plain view and subsequently seized pursuant to the search warrant. In the process of clearing the residence for officer safety, Lieutenant Cousins went into the master bedroom, just off the living room, and noticed something on the vanity bathroom and asked Agent Saltalmachia to inspect it. Agent Saltalmachia testified that on the vanity counter in plain view was “a large rock-like off-white substance half way out of a clear plastic bag with several other small rocks individually packaged.” Agent Saltalmachia testified that he believed the rock was crack cocaine and that he also saw one or two small clear plastic bags of vegetable matter. The agent returned to the living room and advised Mr. Jefferson of his Miranda rights. Thereafter, he and Agent Duplessis left to secure a search warrant of the residence.
The agents returned with the search warrant and asked Mr. Jefferson if there was any other contraband in the residence that they might find during the search warrant’s execution. Mr. Jefferson then advised the agents that in the master bedroom closet, they would find a “quarter bird.” Pursuant to the search warrant, the agents found evidence including: a couple of boxes of plastic bags and a half-Jempty14 box of baking soda used to process cocaine under the vanity; eight large pieces of crack cocaine inside Mr. Jefferson’s closet; hand-rolled cigarettes containing marijuana in the bedroom; a large sum of cash in small bills inside the pockets of a shirt found in Mr. Jefferson’s closet; glass jars containing a white paste that Mr. Jefferson admitted he used to process powder cocaine into crack cocaine; a digital scale with white powder residue; *244 and mail in Mr. Jefferson’s name at that address.
Because the agents were justified in conducting a protective sweep and the evidence discovered in the master bathroom during the sweep was in plain view, the agents had probable cause to obtain and execute a search warrant of the residence. Accordingly, the evidence was lawfully seized and did not violate Mr. Jefferson’s Fourth Amendment rights.

INDEPENDENT SOURCE DOCTRINE

Mr. Jefferson also claims that the independent source doctrine does not apply in the present case because the warrant does not contain sufficient facts to constitute probable cause absent the discovery of the crack cocaine in the master bathroom, and the evidence found as a result of the sweep influenced the agents’ decision to procure a warrant. Pursuant to the independent source doctrine, “ ‘information which is received through an illegal source is considered to be cleanly obtained when it arrives through an independent source.’ ” Murray v. U.S., 487 U.S. 533, 538-39, 108 S.Ct. 2529, 2534, 101 L.Ed.2d 472 (1988) (citing U.S. v. Silvestri, 787 F.2d 736, 739 (1st Cir.1986)). In light of our finding that the subsequent intrusion into the master bathroom pursuant to the protective sweep was lawful, we need not make a determination of whether the independent source doctrine applies.

\vfiECREE

For the foregoing reasons, we find the trial court did not err in denying Mr. Jefferson’s motion to suppress. Accordingly, we affirm Mr. Jefferson’s conviction and sentence.
AFFIRMED.

. State v. Jefferson, 12-1227 (La.App. 4 Cir. 9/13/12), unpub.