STATE OF LOUISIANA

VERSUS

WILLIAM B BARNETT

NO. 24-KA-69  C/W
24-KA-70

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NOS. 22-2023 C/W 22-2025, DIVISION "G"
HONORABLE E. ADRIAN ADAMS, JUDGE PRESIDING

October 30, 2024

**SUSAN M. CHEHARDY
CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Stephen J. Windhorst, and Timothy S. Marcel

**AFFIRMED**
    **SMC**
    **SJW**
    **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUB RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
     Honorable Paul D. Connick, Jr.
     Thomas J. Butler
     Monique D. Nolan
     Zachary L. Grate

COUNSEL FOR DEFENDANT/APPELLANT,
WILLIAM BAYLOR BARNETT
     Gwendolyn K. Brown

DEFENDANT/APPELLANT
WILLIAM BAYLOR BARNETT
     In Proper Person

**CHEHARDY, C.J.**

In this opinion we review the denial of defendant's motion to suppress, which was raised in two separate but related cases in the trial court and has resulted in two separate appeals in this Court, subsequent to defendant's *Crosby* plea in each case. Because both appeals raise the same issue and arise from the same set of facts, we have consolidated them for the sake of efficiency. For the reasons that follow, we affirm the trial court's judgment on defendant's motion to suppress.

*Facts and Procedural History*

On May 10, 2022, in case 22-2023, the Jefferson Parish District Attorney filed a bill of information charging defendant, William B. Barnett, with possession of a firearm while in possession of a controlled dangerous substance, to wit: psilocybin, in violation of La. R.S. 14:95(E) (count one); possession of a controlled dangerous substance, to wit: testosterone, in violation of La. R.S. 40:968(C) (count two); and obstruction of justice by tampering with evidence, in violation of La. R.S. 14:130.1 (count three). Also on May 10, 2022, in case 22-2025, the Jefferson Parish District Attorney filed a separate bill of information charging defendant with possession of a controlled dangerous substance, to wit: THC weighing fourteen grams or less, in violation of La. R.S. 40:966(C), a misdemeanor. All charges arose from evidence seized from defendant's residence on August 3, 2018.

On June 10, 2022, defendant was arraigned and pled not guilty to all counts. On October 20, 2022, defendant filed a motion to suppress physical evidence in both cases. At the January 18, 2023 hearing on defendant's motion to suppress, Detective Benjamin Jones of the Jefferson Parish Sheriff's Office (JPSO) testified that JPSO received a Crime Stoppers complaint in July 2018 for the residence located at 113 Claiborne Court. The complaint identified defendant and disclosed that he was cultivating marijuana inside his residence. Detective Jones explained that when an allegation was received about an individual distributing narcotics at a

residence, the police would often surveil the residence. If the officers did not observe anything to suggest that illicit narcotics were being distributed, the police would conduct a knock and talk, which consisted of talking to the individual who was being investigated.

Detective Jones testified that on August 3, 2018, after surveilling defendant's residence for three to four hours and not observing anything to suggest that illicit narcotics were being distributed, he and Detectives Randy Picarella, Nathan Obiol, and Christopher Cade elected to do a knock and talk. When defendant answered the door, Detective Jones identified himself and indicated that they were investigating a complaint that marijuana was being cultivated inside. Detective Jones testified that when defendant opened the door, the smell of marijuana smoke was "blatantly obvious." He stated that all of the officers on and beneath the porch could smell it.

Detective Jones testified that after answering the door, defendant walked onto the porch, and defendant's girlfriend, Kali Griffith, also came onto the porch. While Detective Jones attempted to explain to her what they were investigating, defendant dashed back inside the residence. Detective Jones testified that he believed defendant either was trying to dispose of something inside the house or trying to evade them. He stated that defendant's actions raised safety concerns for him and the other officers. Detective Jones believed that Detectives Picarella and Obiol pursued defendant through the door and Detective Jones followed behind them. Detective Jones stated that while making contact with defendant, Detective Obiol stated: "There's a gun! There's a gun!" Detective Jones testified that a Glock .45 caliber semi-automatic handgun could be seen by a desk beyond the front door. Detective Jones stated that after a brief struggle, the officers secured defendant and placed him in handcuffs. Detective Jones also testified that when defendant ran

into the residence, he had moved towards a desk located against the wall, and a multi-colored container that contained THC wax was on the desk.

Detective Jones testified that after arresting defendant and seeing the gun and the wax, observing defendant's evasive actions, and detecting the smell of marijuana, the detectives believed there were drugs inside the residence. The officers conducted a sweep of the residence to check for other individuals or weapons but did not find anyone else. Detective Jones then contacted Detective Doubleday at the JPSO Detective's Bureau, who authored a search and seizure warrant that was signed by a commissioner. After obtaining the warrant, the officers searched the residence and found additional marijuana wax, drug paraphernalia, additional firearms, anabolic steroids, and psilocybin mushrooms.[1]

Detective Picarella testified that the surveillance of defendant's residence lasted between three and four hours. He testified that he walked around the house before the knock and talk to observe the layout of the house and to see if there was another exit. He saw cardboard on the side and front windows. He testified that the house was raised and that he did not look in the windows. He did not recall there being access to the back yard.

Detective Obiol testified that he was employed as a narcotics detective with the JPSO at the time of defendant's arrest, and he participated in the surveillance of defendant's residence. He did not recall seeing any evidence of drug transactions or seeing anyone going to or coming from the house. He testified that at the time of the knock and talk, he was on the porch, but when defendant ran back inside, he pursued him for several reasons. First, the officers had smelled marijuana emanating from the house, so they assumed defendant was engaged in illegal

---

[1] Detective Jones testified that bongs and pipes were found inside the residence and that the officers also found ventilation system tubing, boarded-up back windows, soil, and books on cultivating marijuana. Although the detectives did not find marijuana growing at that time, he testified that he believed the complaint was "100 percent correct" and that at one point someone was cultivating marijuana there.

activity. He stated that defendant's act of suddenly running from them suggested that he was evading arrest and could possibly pose a danger. He also was concerned that there could be a weapon inside the house and that defendant was attempting to destroy evidence. After pursuing him into the house and struggling to detain him, defendant attempted to retrieve the firearm located to the right of the entrance on a table.

After considering the parties' post-hearing briefs on the suppression issues, the trial court denied defendant's motion to suppress. On December 4, 2023, defendant withdrew his plea of not guilty, and, after being advised of his *Boykin*[2] rights, pled guilty in case 22-2023 to possession of psilocybin in violation of La. R.S. 40:966(C) (count one, as amended),[3] and guilty as charged on counts two and three, in violation of La. R.S. 40:968(C) and La. R.S. 14:130.1. On the same date and as a part of the same plea agreement, defendant pled guilty in case 22-2025 to the misdemeanor charge of possession of THC weighing fourteen grams or less, in violation of La. R.S. 40:966(C).[4]

Defendant's guilty plea was offered pursuant to La. C.Cr.P. art. 893[5] and *State v. Crosby*, 338 So.2d 584 (La. 1976),[6] thereby preserving his right to appeal the trial court's adverse ruling on his motion to suppress evidence. In case 22-

---

[2] *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

[3] On December 4, 2023, pursuant to the plea agreement, the State amended count one of the bill of information in case number 22-2023 to: "40:966(C), Possession of Psilocybin 2-28 grams."

[4] The misdemeanor charge in case number 22-2025 was appealed separately in this Court as case number 24-KA-70. This Court has opted to consolidate the appeal in 24-KA-70 with the appeal in 24-KA-69.

[5] La. C.Cr.P. art. 893(A)(1)(a) provides, in relevant part:

> When it appears that the best interest of the public and of the defendant will be served, the court, after a first, second, or third conviction of a noncapital felony, may suspend, in whole or in part, the imposition or execution of either or both sentences, where suspension is allowed under the law, and in either or both cases place the defendant on probation under the supervision of the division of probation and parole. …

[6] A *Crosby* plea is a guilty plea that is conditioned upon the review of the denial of a pretrial motion, or upon the review of trial irregularities. At the time of the plea, the defendant should affirmatively reserve the right to seek review of the disputed issues; if the review is successful, the guilty plea may be withdrawn. *State v. Lemonte*, 12-657 (La. App. 5 Cir. 1/30/13), 108 So.3d 1271, 1273 n.1.

2023, the trial court sentenced defendant on counts 1, 2, and 3 to one year at hard labor, deferred, and one year of active probation, pursuant to La. C.Cr.P. art. 893. In case 22-2025, the trial court ordered defendant to pay a $100 fine. The court ordered all sentences to run concurrently. The court further ordered defendant to pay all fines, fees, and court costs, and to perform one hundred hours of community service as a special condition of probation.[7] The defense submitted a Waiver of Ability to Pay Hearing, signed by defendant and defense counsel. Defendant filed a *pro se* motion for appeal, which the trial court granted.

*Appellate Jurisdiction*

At the outset, we must address the Court's decision to consider defendant's appeal from his misdemeanor conviction on the THC charge in case 22-2025 with the appeal from his convictions on counts 1, 2, and 3 in case 22-2023. Ordinarily, this Court's appellate jurisdiction extends only to cases that are triable by a jury. *State v. Karim*, 19-133 (La. App. 5 Cir. 9/9/20), 302 So.3d 1200, 1203, *writ denied*, 20-1185 (La. 1/12/21), 308 So.3d 713. A misdemeanor charge for which the punishment that may be imposed is less than six months imprisonment, or that result in the imposition of a fine that is less than $1,000.00, is not triable by a jury. *See* La. C.Cr.P. art. 779;[8] *Karim*, *supra*; *State v. Flowers*, 11-376 (La. App. 5 Cir. 12/13/11), 81 So.3d 910.

In case 22-2025, defendant was charged with and pled guilty to possession of THC weighing fourteen grams or less, in violation of La. R.S. 40:966(C), a misdemeanor. At the time of the offense, the charge carried a possible fine of not more than three hundred dollars, imprisonment in parish jail for not more than

---

[7] Defendant initialed and signed a Felony Schedule of Fines, Fees, Sentencing Provisions & Probation Requirements, which indicated that defendant was responsible for paying $1,092.00 in court costs and a $2.00 Indigent Transcript Fee.

[8] La. C.Cr.P. art. 779(A) provides: "A defendant charged with a misdemeanor in which the punishment, as set forth in the statute defining the offense, may be a fine in excess of one thousand dollars or imprisonment for more than six months shall be tried by a jury of six jurors, all of whom must concur to render a verdict."

fifteen days, or both. *See* La. R.S. 40:966(C)(2)(a). Thus, the matter was not triable by a jury, and defendant's conviction is not an appealable verdict. The proper procedure for seeking review of a misdemeanor conviction is to file a writ application asking this Court to exercise its supervisory jurisdiction. La. C.Cr.P. art. 912.1(C)(1); *State v. Trepagnier*, 07-749 c/w 07-750 (La. App. 5 Cir. 3/11/08), 982 So.2d 185, 188, *writ denied*, 08-784 (La. 10/24/08), 992 So.2d 1033.

This Court has discontinued the practice of converting jurisdictionally defective appeals to writ applications, instead dismissing matters that are not appealable, yet giving a party time to file a writ application. However, we have recognized exceptional cases, especially when the misdemeanor and felony convictions are intertwined to the point that the interests of justice are better served by considering the matters together. *See*, *e.g.*, *State v. Carroll*, 16-599 (La. App. 5 Cir. 2/8/17), 213 So.3d 486, 488 (finding the defendant's misdemeanor and felony convictions were so intertwined that considering the matters together better served the interest of justice); *State v. Jones*, 12-640 c/w 12-641 (La. App. 5 Cir. 10/30/13), 128 So.3d 436, 441-43 (holding that when the defendant was charged with a misdemeanor and a felony in separate bills of information, judicial economy dictated considering the matters together because the two convictions were intertwined).

Defendant's misdemeanor and felony offenses were charged in separate bills of information, but the charges arose from the same facts and the offenses were grouped together for the acceptance of defendant's guilty pleas, for the motion to suppress hearing, and for sentencing. The trial court's adverse ruling on defendant's motion to suppress is the sole assignment of error that defendant raises in both appeals. As such, we find the felony and misdemeanor convictions to be so intertwined that judicial economy and the interests of justice are better served by considering the matters together.

*Law and Argument*

Defendant argues the trial court erred in denying his motion to suppress for a number of reasons. First, defendant argues the trial court's ruling was incorrect because the officers entered the curtilage of his residence without probable cause. Second, defendant contends the knock-and-talk procedure that followed resulted in his immediate arrest from the time he opened the door, because he was not free to leave. Third, he argues the officers' contentions that there was a strong odor of marijuana "pouring" out of the residence are not credible, thus making the arrest unlawful. As such, defendant argues that the officers had no legal justification to enter his home, and that any evidence seized as a result must be suppressed.

Defendant acknowledges that the knock-and-talk procedure is allowed under Louisiana jurisprudence, but he argues that the facts in this case are distinguishable from other cases in which the procedure was approved. Defendant asserts that the officers had no reason to believe the veracity of the anonymous Crime Stoppers tip regarding the alleged cultivation of marijuana on the premises. Defendant further argues that the officers who conducted surveillance for several hours outside of his residence did not observe anything that would confirm the information provided in the tip. Defendant points out that while the State made much of the fact that he did not have a fence to keep the officers out of his yard, the law provides the same protection to citizens with or without fences, and officers are prohibited from entering the curtilage of a citizen's home without probable cause or a warrant.[9]

---

[9] Defendant cites *Florida v. Jardines*, 569 U.S. 1, 133 S.Ct. 1409, 1414, 185 L.Ed.2d 495 (2013), which states:

> [T]he area "immediately surrounding and associated with the home" - what our cases call the curtilage - as "part of the home itself for Fourth Amendment purposes." That principle has ancient and durable roots. Just as the distinction between the home and the open fields is "as old as the common law," so too is the identity of home and what Blackstone called the "curtilage or homestall [sic]," for the "house protects and privileges all its branches and appurtenants [sic]." This area around the home is "intimately linked to the home, both physically and psychologically," and is where "privacy expectations are most heightened."

Defendant posits that there was "absolutely no evidence" that marijuana was being smoked because after officers entered his residence, their search produced no evidence of marijuana or of marijuana having been smoked. Defendant further points to La. C.Cr.P. art. 162.4, a statute enacted in 2022, which states that the odor of marijuana alone shall not provide officers with probable cause to search a person's place of residence without a warrant. Although defendant acknowledges that this provision did not exist at the time his residence was searched, defendant states that medical marijuana was legal at that time, and if officers smelled marijuana, the odor alone was insufficient probable cause to initiate the arrest.

Defendant further argues that the encounter when he opened the door should have been deemed consensual, which would have given him the right to terminate the encounter and re-enter his home. Defendant contends the officers' warrantless entry into his home was unlawful, and the warrant that subsequently issued was based on information obtained from an illegal entry and tainted by prior illegal conduct. As such, defendant states that the evidence seized should have been suppressed as "fruit of the poisonous tree" under *State v. Nicholas*, 06-903 (La. App. 5 Cir. 4/24/07), 958 So.2d 682, 686-87, and his convictions and sentences should be reversed.

The State responds that the testimony and evidence offered at the suppression hearing clearly support the trial court's decision to deny the motion to suppress evidence. The State argues that the knock and talk conducted at defendant's residence was valid and proper under Louisiana jurisprudence. The officers identified themselves and explained to defendant that they were investigating a narcotics complaint associated with his residence. The State argues that defendant was not forced or coerced into opening his door, and he consented to speaking with them. According to the State, both Detectives Jones and Obiol testified that they smelled marijuana when defendant opened his door. After

defendant raced back into his home, and based on their concerns for officer safety and the safety of anyone inside the home, the State points out that the officers conducted a limited protective sweep for any persons inside the home. The State argues that the subsequent search of defendant's residence was conducted under a valid search warrant obtained after the protective sweep. The State further contends that defendant's contention that the witnesses' testimony was not credible is incorrect, as the testimony was consistent with the evidence presented at the hearing.

The State further argues that the officers did not illegally search defendant's curtilage before initiating the knock and talk. The State contends the officers did not enter a protected area of defendant's residence; their testimony confirms that they merely inspected the layout of the home visually for safety before they approached the door. The State points out that the area that the detectives walked around was not enclosed—it was entirely open. But even if the area was a part of the curtilage of the home, the State argues that the open path did not "enjoy the same measure of Fourth Amendment protection that a home does."

The Fourth Amendment of the United States Constitution and Article 1, § 5 of the Louisiana Constitution protect individuals against unreasonable searches and seizures. *State v. Abrego*, 21-166 (La. App. 5 Cir. 12/1/21), 334 So.3d 883, 888, *writ denied*, 21-1949 (La. 2/22/22), 333 So.3d 450. If evidence is derived from an unreasonable search or seizure, the proper remedy is to exclude the evidence from trial. *State v. Bardell*, 17-274 (La. App. 5 Cir. 11/15/17), 232 So.3d 82, 86. A defendant who is adversely affected may move to suppress evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained. La. C.Cr.P. art. 703(A); *State v. Fuentes*, 22-89 (La. App. 5 Cir. 11/2/22), 353 So.3d 911, 915.

When evidence is seized pursuant to a search warrant, the defendant bears the burden of proof at a hearing on his motion to suppress that evidence. La. C.Cr.P. art. 703(D); *State v. Cowans*, 17-483 (La. App. 5 Cir. 7/6/18), 251 So.3d 1185, 1194, *writ denied*, 18-1302 (La. 4/8/19), 267 So.3d 613. The trial court is afforded great discretion in ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. *State v. Isaac*, 17-87 (La. App. 5 Cir. 10/25/17), 229 So.3d 1030, 1038, *writ denied*, 17-2106 (La. 6/15/18), 257 So.3d 679.

As a general rule, searches and seizures must be conducted pursuant to a validly executed search warrant or arrest warrant. *State v. Holmes*, 08-719 (La. App. 5 Cir. 3/10/09), 10 So.3d 274, 278, *writ denied*, 09-816 (La. 1/8/10), 24 So.3d 857. Warrantless searches and seizures are *per se* unreasonable unless justified by one of the exceptions to the warrant requirement. *Id.* When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the State bears the burden of proving that the search and seizure was justified pursuant to one of the exceptions to the warrant requirement. La. C.Cr.P. art. 703(D); *State v. Joseph*, 02-717 (La. App. 5 Cir. 6/27/03), 850 So.2d 1049, 1052, *writ denied sub nom. State ex rel. Joseph v. State*, 04-2404 (La. 6/17/05), 904 So.2d 686.

The exclusionary rule bars the use of physical and verbal evidence obtained either during, or as a direct result of, an unlawful invasion. The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of illegality, or fruit of the poisonous tree. *State v. Salinas*, 17-485 (La. App. 5 Cir. 7/6/18), 251 So.3d 1166, 1176, *writ denied*, 18-1301 (La. 4/8/19) 267 So.3d 614 (citing *State v. Nicholas*, 06-903 (La. App. 5 Cir. 4/24/07), 958 So.2d 682, 686-87).

We first consider whether the officers legally executed a knock and talk on the basis of an uncorroborated tip. Detective Jones testified that JPSO received a complaint from Crime Stoppers alleging that defendant was cultivating marijuana inside his residence. Detective Jones testified that when an allegation of drug activity is received, the police often surveil the residence. If nothing is observed, the police conduct a knock and talk, which involves attempting to make contact with the individuals of the residence and explaining the nature of the investigation in an effort to confirm or dispel the allegations received in the complaint.

Defendant contends that although the knock-and-talk procedure is permissible under Louisiana law, in this case it resulted in his immediate arrest from the time he opened the door, and it was a violation of his state and federal constitutional rights where the officers failed to determine the reliability of the tip.

We disagree. The officers were not required to substantiate the anonymous complaint before they conducted the knock and talk. When officers possess information that they believe warrants further investigation, but which information is insufficient to constitute probable cause for a search warrant, they may approach the person suspected of engaging in illegal activity at the person's residence, knock on the door, identify themselves as police officers, request consent to talk to the individual about the alleged illegal activity, and request permission to enter the premises. *Salinas*, 251 So.3d at 1176 (citing *State v. Warren*, 05-2248 (La. 2/22/07), 949 So.2d 1215, 1221-22). The prevailing rule is that, absent a clear expression by the owner to the contrary, police officers in the course of their official business are permitted to approach one's dwelling and seek permission to question an occupant. *Id.*

In *Nicholas*, *supra*, this Court reviewed the trial court's decision to deny the defendant's motion to suppress. There, the defendant pled guilty under *State v. Crosby* to possession of a firearm while in possession of cocaine. 958 So.2d at 684.

The police received information from the Kenner Police Department's drug hotline of narcotics activity at a specific address. One of the officers testified that it was not the first complaint of drug activity received for that location, and he previously had made arrests at that residence. *Id.* at 685. The officers surveilled the premises and observed foot traffic going to and coming from the residence. One of the officers approached the residence to conduct a knock and talk. The door was wide open, and he observed defendant sleeping on the sofa in the living room. Officers knocked on the doorframe and announced their presence. The defendant's uncle, who they believed was an occupant of the home, invited them inside. The officers conducted a protective sweep for officer safety. They located drugs and a knife in plain view on a bookshelf in the living room. The officers woke the defendant, and when he sat up, they observed a handgun under his stomach. The officers detained him and advised him of his rights. When asked if he had anything else on his person, defendant stated that he had "crack" in his pocket. The contents of a plastic bag were removed from his pocket and field-tested, with a positive result for crack cocaine. The officers arrested the defendant. *Id.*

On appeal, the defendant argued the trial court erred in denying his motion to suppress evidence because officers entered the residence without a valid search warrant, probable cause, exigent circumstances, good faith, or consent from the legitimate owner of the home. The defendant further argued that the officers did not attempt to verify the alleged complaint and that the officers needed reasonable suspicion to knock and announce their presence. *Id.* at 686. This Court determined that because the officer's act of knocking on defendant's doorframe was not an investigatory stop, the reliability of the complaints did not need to be established before the knock.[10] As in *Nicholas*, we find the JPSO detectives were not required

_____

[10] In *Nicholas*, this Court looked to *State v. Sanders*, 374 So.2d 1186, 1188 (La. 1979), holding that an officer's act of knocking on a door does not constitute an investigatory stop, and when a door is opened in response to an officer's knock, it constitutes "consent" to confront the caller;

to verify the Crime Stoppers complaint before approaching defendant's residence to conduct the knock and talk.

We next address defendant's contention that the officers who walked around his house encroached on his curtilage. The hearing testimony established that as officers approached the house to conduct the knock and talk, other officers walked around the side of the residence. According to Detective Picarella, he did a quick "walk around" to see the house's layout and determine whether there was another exit, but he did not enter the back yard. He testified that the house was not enclosed by a fence or structure. He testified that he saw cardboard on the side and front windows, which could indicate that the residence was a "grow house," but it did not always mean that. He explained that the house was raised, and he did not look into the windows.

The curtilage of a home is that "area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life." *Salinas*, 251 So. 3d at 1177 (citing *United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987)). The curtilage is considered part of the home itself and is therefore afforded Fourth Amendment protection. *Dunn*, *supra*. Courts look at four factors to determine how intimately an outside area is tied to the home itself or is an extension of the residence's living area and thus constitutes "curtilage": (1) the area's proximity to the home; (2) whether the area is included within an enclosure surrounding the home; (3) whether the area is being used for the intimate activities of the home; and (4) the steps taken by the resident to protect the area from observation by passers-by. *Id.*

Applying these factors, the area surrounding defendant's residence is not curtilage. The sides of the home were not enclosed by a fence, and the testimony

---

the police then have the right to speak to the occupant if the occupant agrees. *Nicholas*, 958 So.2d at 687.

reflects that it was a shotgun-style house whose sides were visible from the street. Defendant had no expectation of privacy there.

Moreover, the detectives' act of walking down the sides of the house occurred at approximately the same time that other detectives approached the porch to knock on the door. Where the sides of the house were visible from the street, unfenced, and the detectives were simply searching for additional exits in conjunction with the knock and talk, they did not gather any additional information or evidence before defendant opened his front door. As such, we find no merit to defendant's suggestion that walking down the sides of defendant's residence in this instance constituted an illegal search that was used to justify the knock and talk.[11]

We turn now to the detectives' decisions to follow defendant inside the house, conduct a protective sweep, and eventually conduct a search. First, based on the plain smell of marijuana, the detectives had sufficient grounds to search defendant's residence.[12] At the time of defendant's arrest, the plain-smell exception was an extension of the plain-view exception. *State v. Gray*, 13-1326 (La. 6/28/13), 122 So.3d 531, 532. Courts previously have recognized that the presence of the odor of marijuana where law enforcement is lawfully positioned provided

---

[11] Here, the detectives stood on defendant's porch to conduct the knock and talk. In *State in Int. of K.K.*, 22-549 (La. App. 4 Cir. 10/12/22), 351 So.3d 419, 425, the Court stated:

> "The front porch of a private residence falls within the curtilage of the home for Fourth Amendment purposes because it encompasses 'the area around the home to which the activity of home life extends.'" *State v. Deary*, 99-627 (La. 1/28/00), 753 So.2d 200, 201 (quoting *Oliver v. U.S.*, 466 U.S. 170, 182, n.12, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984)). It "does not," however, "necessarily enjoy the same measure of protection accorded the home by the Fourth Amendment ... because of 'an almost implicit understanding and custom in this country that, in the absence of signs or warning, a residence may be approached and the occupants summoned to the door by knocking.'" *Id.* (quoting *State v. Sanders*, 374 So.2d 1186, 1189 (La. 1979)).

[12] The hearing testimony established that the odor of marijuana was emanating from defendant's residence when he opened the door. Detective Jones stated that "all agents on the porch and beneath the porch could smell marijuana smoke coming out of the residence." Detective Obiol stated: "we had smelled marijuana emanating from the house. It was very apparent."

sufficient grounds to search. *State v. Jefferson*, 13-703 (La. App. 4 Cir. 4/16/14), 140 So.3d 235, 241. Here, the detectives were lawfully positioned on defendant's porch while conducting the knock and talk and smelled the odor of marijuana emanating from defendant's home.

Detective Jones testified that he believed defendant was trying to get rid of something inside the house or evade them when defendant ran back inside. He explained that he was concerned for the safety of himself and the other officers. Detective Obiol testified that he and the other officers pursued defendant because of the smell of marijuana, his act of running back into the house after the detectives identified themselves, and for officer safety. He also was concerned that defendant was attempting to destroy evidence. Detective Obiol stated that after they pursued him, defendant attempted to retrieve the firearm located to the right of the entrance.

A warrantless search is allowed when "police have a reasonable belief that exigent circumstances require immediate action and there is not time to secure a warrant." *Warren*, 949 So.2d at 1224. One such circumstance is when the police "reasonably fear[ ] for the safety of someone inside the premises." *Id.* The safety of others is a particular concern when police respond to a report of a crime in progress, and, in such a situation, police judgments regarding warrantless entries "should be afforded an extra degree of deference." *Id.* To justify a warrantless entry, the exigent circumstances must be known to the officers "at the time of the warrantless entry" and cannot be based on evidence discovered during the search. *Id.*

Exigent circumstances justify a warrantless entry, search, or seizure when "'police officers, acting on probable cause and in good faith, reasonably believe from the totality of the circumstances that (a) evidence or contraband imminently will be destroyed or (b) the nature of the crime or character of the

suspect(s) pose a risk of danger to the arresting officers or third persons.'" *State v. Cortez*, 11-1041 (La. App. 5 Cir. 5/22/12), 98 So.3d 382, 392. Exigent circumstances may arise from the need to prevent the offender's escape, to minimize the possibility of a violent confrontation that could cause injury to the officers and the public, and to preserve evidence from destruction or concealment. *State v. Brisban*, 00-3437 (La. 2/26/02), 809 So.2d 923, 927-28. A "hot pursuit" need not involve an extended chase. It may include a chase that ends almost before it begins. *State v. Doussan*, 05-586 (La. App. 5 Cir. 2/14/06), 924 So.2d 333, 342, *writ denied*, 06-608 (La. 10/13/06), 939 So.2d 372.

In *State v. Jenkins*, 10-1471 (La. App. 1 Cir. 3/25/11), 2011 WL 1103319 (unpublished), the defendant was convicted of possession with intent to distribute cocaine and possession with intent to distribute marijuana. Officers received a tip of narcotics activity at an apartment complex. After surveilling the location, no unusual activity was observed, and officers decided to conduct a knock and talk. Two officers proceeded to the rear of the apartment to surveil, and two others approached the front door. They saw the defendant standing in front of the apartment. When one of the officers identified himself as the police, defendant responded "oh sh*t" and ran into the apartment, locking the door behind him. He was heard shouting: "It's the police, it's the police." One of the officers at the back of the premises saw defendant through a sliding glass door running through the living room and pulling open the sliding glass door. The defendant exited the apartment and the officer identified himself; the defendant ran back into the apartment as the officer yelled for him to stop. The officer followed him in and tackled him on the floor. The defendant was handcuffed, placed under arrest, and searched. Currency and a clear plastic bag containing crack cocaine were found in his pocket. Three bags of marijuana were found on the living room floor. *Id.* at. *1-2.

On appeal, the defendant argued that because the officers did not have reasonable suspicion to conduct a warrantless stop or probable cause to justify the warrantless entry into his apartment, the physical evidence seized from the search of his person and his apartment must be suppressed. He argued that there was no probable cause or exigent circumstances. *Id.* at *2.

The *Jenkins* Court found the knock and talk valid. *Id.* at *5. Considering the defendant's "headlong flight at the approach of the police officers, together with the tips received by the police earlier that day," the Court found the officers had sufficient information to form a reasonable suspicion "based on specific, articulable facts, that defendant had committed or was about to commit a criminal offense." *Id.* at *6. The court further stated it was clear that the officers had a legitimate concern for their own safety, and acknowledged the possibility that the defendant might have attempted to destroy the evidence. *Id.* at *7. Given the exigent circumstances, the Court found the officers' warrantless entry into the defendant's apartment "in hot pursuit to effectuate his arrest was reasonable." *Id.*[13] Here, as in *Jenkins*, exigent circumstances warranted the officers' entry into defendant's home.

As for the protective sweep conducted as soon as defendant had been detained, Detective Jones testified that after detaining defendant, the officers conducted a sweep of the residence to check for other individuals or weapons. No additional individuals were located. In *Cowans*, *supra*, we discussed protective sweeps:

> A "protective sweep" is an exception to the general warrant requirement of the Fourth Amendment. A protective sweep is "a quick and limited search of the premises ... conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Maryland v. Buie*, 494 U.S. 325,

---

[13] The Court stated that once the defendant was arrested, the search of his person incident to the arrest was justified "as a well-established exception to the warrant requirement." *Jenkins*, 2011 WL 1103319, at *7.

327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). In order to conduct a protective sweep, the searching officer must possess a "reasonable belief based on specific and articulable facts" which, taken together with the rational inferences from those facts, reasonably warrants the officer to believe the area swept "harbors an individual posing a danger to those on the arrest scene." *Id.* at 337, 110 S.Ct. 1093. The legitimate protective sweep may not be "a full search," but may be no more than "a cursory inspection of those spaces where a person may be found." *United States v. Gould*, 364 F.3d 578, 587 (5th Cir. 2004), *cert. denied*, 543 U.S. 955, 125 S.Ct. 437, 160 L.Ed.2d 317, *quoting Maryland v. Buie,* 110 S.Ct. at 1099.

*Cowans*, 251 So.3d at 1194. Moreover, officers may temporarily secure a dwelling to protect themselves and to prevent the removal or destruction of evidence to preserve the status quo while obtaining a search warrant. *State v. Banks*, 11-961 (La. App. 5 Cir. 5/22/12), 95 So.3d 508, 517; *State v. Voltolina*, 10-1090 (La. App. 5 Cir. 10/25/11), 77 So.3d 1027, 1032. Such a dwelling seizure is not in and of itself unreasonable. *See Segura v. United States*, 468 U.S. 796, 810, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). Given the circumstances in the present case, the protective sweep of the premises was lawful. Additionally, the officers applied for and a commissioner granted a search warrant. The officers then searched the residence and found marijuana wax, drug paraphernalia, additional firearms, anabolic steroids, and psilocybin mushrooms.

Defendant questions the credibility of the testifying officers. However, the trial court's determination as to the credibility of witnesses on a motion to suppress is to be accorded great weight on appeal unless unsupported by the evidence. *State v. Murphy*, 14-437 (La. App. 5 Cir. 10/15/14), 181 So.3d 1, 8. The credibility of witnesses at the suppression hearing is within the discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness, and such credibility determinations will not be reweighed on appeal. *State v. Enclade*, 03-353 (La. App. 5 Cir. 9/16/03), 858 So.2d 8, 13 (citing *State v. Calvert,* 01-826 (La. App. 5 Cir. 2/26/02), 811 So.2d 1081, 1084).

We also reject defendant's contention that because *medical* marijuana was legal at the time of his arrest, the odor of marijuana was insufficient to provide probable cause to initiate the arrest. This argument ignores the tip that officers received indicating that defendant was *growing* marijuana in his residence. Additionally, when the officers performed the knock and talk, defendant came out to the porch but ran back inside soon thereafter. Defendant's actions, combined with the tip, the smell of marijuana, and the concern for the officers' safety, led officers to enter defendant's residence. Thus, it was not the smell of marijuana *alone* that led officers to enter and subsequently search defendant's residence. Furthermore, when Detective Jones told defendant what the officers were investigating, defendant denied that marijuana was being cultivated inside the residence and denied that anyone was smoking marijuana; defendant did not suggest that anyone was smoking marijuana for medical reasons.

In sum, the detectives' decision to perform the knock and talk based on the Crime Stoppers tip was permissible. Their subsequent entry into defendant's residence without a warrant was justified in these circumstances. Once a warrant was obtained, a valid search was conducted. Accordingly, we find no error in the trial court's ruling denying defendant's motion to suppress, as the evidence collected was not fruit of the poisonous tree.

Lastly, we reviewed the records for errors patent according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990). The review revealed no errors patent.

CONCLUSION

For the foregoing reasons, defendant's convictions and sentences are affirmed.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **OCTOBER 30, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

CURTIS B. PURSELL
CLERK OF COURT

# 24-KA-69
### C/W 24-KA-70

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE E. ADRIAN ADAMS (DISTRICT JUDGE)
MONIQUE D. NOLAN (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          GWENDOLYN K. BROWN (APPELLANT)

**MAILED**
WILLIAM B. BARNETT (APPELLANT)
44 SPANISH FORT BOULEVARD
NEW ORLEANS, LA 70124

HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
ZACHARY L. GRATE (APPELLEE)
ASSISTANT DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053